**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals,<br><br>     Plaintiffs,<br><br>v.<br><br>**RESOURCE MARKETING CORP., LLC**,<br><br>     Defendant. | Case No.:  1:19-cv-00386-MAD-CFH<br><br>HON. Judge Mae A. D'Agostino<br><br><br>Return Date: March 3, 2020 |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE,**
**AND SETTING FINAL APPROVAL HEARING**

1

Plaintiffs Jerry Baudin, Josephine Duffney and Karishma Persaud ("Plaintiffs") hereby request that the Court grant preliminary approval of a settlement reached by the parties, as further set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Setting Final Approval Hearing and the Declarations of Kevin J. Stoops and Rod M. Johnston, filed concurrently with this Motion. A Proposed Order is attached as **Exhibit D** to this Motion.

Dated: January 24, 2020

/s/ *Rod M. Johnston*
Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs and the putative Class/Collective action members*

## CERTIFICATE OF SERVICE

I certify that on January 24, 2020, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*
Annette DeCoste

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
## ALBANY DIVISION

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**RESOURCE MARKETING CORP., LLC**,<br><br>Defendant. | Case No.:  1:19-cv-00386-MAD-CFH<br><br>HON. Judge Mae A. D'Agostino<br><br><br>Return Date: March 3, 2020 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, <u>AND SETTING FINAL APPROVAL HEARING</u>

1

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................................iii

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL HISTORY OF THE CASE .............................................2

        A.    The Proceedings Pleadings and Parties........................................2

        B.    Summary of Discovery Conducted Prior to Mediation ..................4

        C.    Mediation and Estimated Exposure ..............................................4

III.    SETTLEMENT TERMS .........................................................................6

        A.    Value of the Settlement..................................................................6

        B.    Size of the Class and the Class Definition ....................................6

        C.    Nature of the Payments and Notice, Exclusion, Objection Periods....................6

        D.    The Released Claims and Released Parties ....................................7

        E.    Attorneys' Fees, Costs, Enhancement and Administration ..............8

        F.    The Net Distribution of Funds, Calculations and Payments to the Class........8

        G.    Notice Procedures .........................................................................9

        H.    Tax Consequences, Allocations and Uncashed Checks....................9

IV.     CONDITIONAL CERTIFICATION, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF THE SETTLEMENT AGREEMENT .................9

        A.    Conditional Certification of the Rule 23 Class ..............................9

              1.    Rule 23(a)'s Requirements .................................................11

                    a.    *Numerosity* ...........................................................11
                    b.    *Commonality*.........................................................11
                    c.    *Typicality*..............................................................12
                    d.    *Adequacy*..............................................................13
                    e.    *The Implied Requirement of Ascertainability* ...........13

              2.    Rule 23(b)(3)'s Requirements..............................................14

          a.    *Predominance* ........................................................... 14

          b.    *Superiority*................................................................. 16

   B.    Appointment of Class Counsel ........................................................ 17

   C.    Preliminary Approval of the Settlement Agreement ....................................... 17

   D.    Plaintiffs' Proposed Notice .............................................................. 22

V.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS .................................... 23

   A.    The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval ................... 23

       1.    Attorney's Fees ................................................................. 23

       2.    Expenses and Costs.............................................................. 24

       3.    Named Plaintiff Service Awards ........................................... 24

VI.   CONCLUSION.............................................................................. 25

## INDEX OF AUTHORITIES

**Cases**

*Acosta v. Evergreen Moneysource Mortg. Co.*, 2:17-CV-00466-KJM-DB, 2019 WL 6051117 (E.D. Cal. Nov. 15, 2019) ...........................................................................21

*Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61 (S.D.N.Y. 2009) ...............................................11

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)...........................................................................................................................13, 14

*Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105 (S.D.N.Y. 2013).....................................16

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ..............................19, 23, 24, 25

*Bouzzi v. F & J Pine Rest., LLC*, 841 F.Supp.2d 635 (E.D.N.Y .2012) ...................................18

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)................................................................2, 15, 26

*Chavarria v. N.Y. Airport Serv., Inc.*, 875 F.Supp.2d 164 (E.D.N.Y. 2012) ..........................21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)...............................................18

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 2009 WL 6615729 (S.D.N.Y. Nov.27, 2009) ...........................................................................................................................19

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................18

*Danieli v. IBM,* No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ................20

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y.2001)................................................14

*Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601 (W.D.N.Y. 2011) ...........................19

*deMunecas v. Bold Food, LLC*, 09 Civ. 0440(DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...............................................................................................25

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ...................................................10

*Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y.2003)............................14

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)............................................12

*Fears v. Wilhelmina Model Agency, Inc.*, 02 Civ. 4911(HB), 2003 WL 21659373 (S.D.N.Y. July 15, 2003) ........................................................................................................13

*Fox v. Cheminova, Inc.*, 213 F.R.D. 113 (E.D.N.Y .2003)...............................................11, 13

*Freeland v. AT & T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) .................................................12

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .................................................................11, 12

*Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835(PAE), 2012 WL 2458172 (S.D.N.Y. June 28, 2012)...........................................................................20

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...............................23

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ..............................................................19

*Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)...................15, 16

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) .........................................................................24

I*n re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29 (2d Cir. 2009) .......................12

*In re Giant Interactive Grp., Inc. Sec. Litiq.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ....................23

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).....................22

*In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24 (2d Cir. 2006)....................................10

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011) ...............................................................................................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 209 F.R.D. 323 (S.D.N.Y.2002) .........................................................................................14

*In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ...............10

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir.1980)...........................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir.2001)........................15

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 13 Civ. 2001(JPO), 2014 WL 1088001 (S.D.N.Y. Mar. 19, 2014) ......................................................................12

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) ...................................................................18

*Johnson v. Brennan,* 10 Civ. 4712(CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................................................................................................................25

*Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) .......................................................10

*Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454 (2d Cir. 2013) ............................................10

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .........................................................11, 12

*McKenna v. Champion Intern. Corp.*, 747 F.2d 1211 (8th Cir. 1984) ...................................19

*McReynolds v. Richards–Cantave*, 588 F.3d 790 (2d Cir. 2009) ..........................................18

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247 (2d Cir.2002) ...................................................14

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)...............................................................15

iv

*Prasker v. Asia Five Eight LLC*, 08 Civ. 5811(MGC), 2010 WL 476009
(S.D.N.Y. Jan. 6, 2010)...........................................................................................12

*Schear v. Food Scope Am., Inc.*  297 F.R.D. 114 (S.D.N.Y. 2014)........................................12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ......................12

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76, (S.D.N.Y. 2010) ..................................................10

*Tiro v. Pub. House Invs., LLC,* 11 Civ. 7679(CM), 11 Civ. 8249(CM), 2013 WL
2254551 (S.D.N.Y. May 22, 2013)..........................................................................20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...........................................................11

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).....................11, 18, 23

*Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332 (S.D.N.Y. 2012)..........................................18

**Other Authorities**

29 U.S.C. § 201 ...................................................................................................................1, 2

29 U.S.C. § 216.................................................................................................................2, 4, 5

29 U.S.C. § 216(b) ...............................................................................................................2, 4

CPLR § 5004.............................................................................................................................5

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed.
2002) .......................................................................................................................19

Manual for Complex Litigation § 21.222 (4th ed. 2004)........................................................14

New York Codes, Rules and Regulations § 142-2.2 .................................................................2

Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84
N.Y.U. L. Rev. 97 (2009) ........................................................................................11

**Rules**

Fed. R. Civ. P. 23................................................................................................... passim

Fed. R. Civ. P. 23(a) ............................................................................................. passim

Fed. R. Civ. P. 23(a)(4)...............................................................................................13

Fed. R. Civ. P. 23(b) .............................................................................................. 9, 10

Fed. R. Civ. P. 23(b)(3)........................................................................................ passim

Fed R. Civ. P.  23(c) ..............................................................................................17, 22

Fed. R. Civ. P. 23(c)(1)(B) .........................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................22, 23

Fed. R. Civ. P. 23(e) .........................................................................................17, 22

Fed. R. Civ. P. 23(e)(1) .........................................................................................22

Fed. R. Civ. P. 23(g) .............................................................................................17

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................................17

## I.    <u>INTRODUCTION</u>

This is a Fair Labor Standards Act ("FLSA") and Fed. R. Civ. P. 23 ("Rule 23") wage-and-hour hybrid collective/class action. Plaintiffs Jerry Baudin, Josephine Duffney and Karishma Persaud ("Plaintiffs") and the putative class/collective action members are approximately 418 current or former account representatives and transfer agents who worked for Defendant Resource Marketing Corp., LLC ("Defendant") at any time between April 1, 2016 through November 7, 2019.

The parties request preliminary approval of a $244,000 collective/class action settlement. Filed in support of this Preliminary Approval Motion is the Joint Stipulation of Settlement and Release (the "Settlement Agreement" or "Agreement") (**Exhibit A**), the proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Class Notice") (**Exhibit 1** to the Agreement), and the Declarations of Plaintiffs' Counsel, Kevin J. Stoops ("Stoops Decl.") and Rod M. Johnston ("Johnston Decl.") (**Exhibits B-C**). This is a common fund settlement with no claims process. There will be no claim forms, meaning that class members who do not request exclusion from the settlement will automatically receive settlement checks.[1] The state-law Rule 23 class and the FLSA collective action members (collectively, "Class Members") are defined as, "all of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019." (**Ex A**, Agreement, ¶ 1.4.)

For settlement purposes only, Plaintiffs request an order (1) preliminarily certifying the proposed Settlement Class[2] under Rule 23 and the FLSA, 29 U.S.C. § 201 *et seq*.; (2) preliminarily

---

[1] Attached as **Exhibit 2** to the Agreement is a proposed Cover Letter that will accompany the issuance of settlement checks.

[2] "Settlement Class Members" means the Class Members who do not opt out of the

1

approving the settlement; (3) preliminarily appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel; (4) approving the proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Class Notice"); and (5) scheduling a hearing on the final approval of the settlement, approval of Plaintiffs' Counsel as Class Counsel, and approval of Plaintiffs' application for attorneys' fees and costs.

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings and Parties

This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Rule 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's alleged willful violations of the FLSA, 29 U.S.C. § 201 *et seq.*, New York Codes, Rules and Regulations § 142-2.2, and common law. (*See* ECF No. 1, Collective and Class Action Complaint ("Complaint").)

Defendant operates a call center facility in Clifton Park, New York. (*Id.*, ¶¶ 2, 4.) In order to carry out its business model, Defendant employs non-exempt hourly call center employees, referred to as account representatives or transfer agents ("Agents"), to verify and prescreen inbound leads over the telephone and then deliver them via hot call transfer to a salesperson. (*Id.*, ¶ 3.) More specifically, Defendant employs automatic dialing software (the "Auto Dialer") that automatically dials telephone numbers of inbound customer leads. (*Id.*, ¶ 4.) Once the call has been answered, the Auto Dialer connects the call to an Agent, who, using a script provided by Defendant, asks a series of questions to determine, based upon criteria provided by Defendant, whether to qualify the customer as a hot lead and initiate a hot call transfer to a salesperson. (*Id.*) Defendant employs the majority of these Agents at its brick-and-mortar call center facility in

---

settlement. (**Ex A**, Agreement, ¶ 1.22.)

Clifton Park, New York. (*Id*.) Defendant also employs remote Agents, who work for Defendant from home using a personal computer to remotely connect to the Auto Dialer. (*Id*.)

In connection with the filing of the Complaint, Plaintiffs alleged that they and the putative class/collective action members were employed by Defendant as Agents at Defendant's Clifton Park, New York call center facility and were required to perform unpaid off-the-clock overtime work before and after their scheduled shifts and during their unpaid lunch breaks, such as booting up and shutting down computers and logging into computer software programs and applications that were integral and necessary for the performance of their work. (*Id*., ¶ 8.) According to Plaintiffs, Defendant's Agents were not compensated for this time because Defendant trained and instructed its Agents not to record this time on their timesheets. (*Id*.)

Plaintiffs, on behalf of themselves and the putative class/collective action members, sought to recover unpaid overtime wages arising from the alleged off-the-clock overtime work, as well as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs. (*Id*., ¶¶ 13, 111-128.) With respect to the alleged off-the-clock overtime work, Plaintiffs alleged that Defendant failed to pay Agents for the following tasks:

a.   At the beginning of each shift in connection with: locating workstations, starting-up and logging into the computers, systems and programs utilized during their shift, and reading e-mails – ***averaging 5 to 10 minutes per shift***;

b.   During their meal periods in connection with logging back into Defendant's programs and systems – ***taking up to 5 minutes per shift***; and

c.   At the end of each shift in connection with: shutting-down and logging out of computers, systems and programs – ***averaging 2 to 3 minutes per shift***.

(*Id*., ¶¶ 52-63.)

Additionally, Plaintiffs alleged that Defendant refused to compensate its Agents for any time spent disconnected from the Auto Dialer. (*Id*., ¶ 8.) According to Plaintiffs, Defendant unlawfully deducted this compensable time – ***averaging up to one hour per week*** – from the

3

Agent's timesheets. (*Id.*, ¶¶ 64-74.)

Defendant denied all liability, damages, and that class or collective action certification was proper. (**Ex B**, Stoops Decl., ¶¶ 10-11, 24; **Ex C**, Johnston Decl., ¶¶ 10-11, 24.) On April 15, 2019, Plaintiffs filed a Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). (ECF No. 11.) In lieu of briefing the issue of conditional certification, the parties engaged in settlement discussions, including the exchange of payroll records and data, with the goal of settling, rather than litigating, the dispute. (**Ex B**, Stoops Decl., ¶ 12; **Ex C**, Johnston Decl., ¶ 12.)

The parties reached a successful settlement during the mediation held on November 7, 2019 and immediately began working to formalize the settlement terms agreed upon at the mediation and preparing a motion for Court approval of the settlement. (*Id.*, ¶¶ 12, 29.)

### B.    <u>Summary of Discovery Conducted Prior to Mediation</u>

Plaintiffs' Complaint was based upon substantial pre-filing research, both factual and legal. (*Id.*, ¶¶ 16.) In addition, Defendant produced electronically stored information (ESI) and class data responsive to Plaintiffs' informal discovery requests. (*Id.*, ¶¶ 16, 18.) The parties' counsel conducted numerous further conferences and exchanged correspondence on Plaintiffs' claims, Defendant's defenses, and the scope of informal discovery. (*Id.*, ¶¶ 16, 18-19.) Through the efforts of counsel for both parties, substantial information was exchanged prior to mediation. (*Id.*) This information included, among other things, a class list identifying dates of employment and rates of pay. (*Id.*, ¶¶ 18.) From this information, Plaintiffs' counsel was able to ascertain that 418 Class Members were employed during the class period at an average hourly wage rate of $12.59. (*Id.*)

### C.    <u>Mediation and Estimated Exposure</u>

Finding that their respective interests were best served by compromise, the parties agreed to

mediate, after conducting the above-described discovery and investigation, on November 7, 2019 with William G. Bauer. (*Id*., ¶¶ 12, 29.) After a full day of substantial negotiations, the parties settled the matter and entered into a tentative agreement, which formed the basis for the settlement now before the Court for approval. (*Id*.) At all times, the parties' negotiations were non-collusive, adversarial, and at arm's length, while recognizing the uncertainty, risk, expense, and delay attendant to litigating this action through trial and any appeals. (*Id.*, ¶¶ 24-25, 29-30, 48.)

The parties reached the settlement only after evaluating Plaintiffs' theories of potential exposure in connection with the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses. (*Id.*, ¶¶ 24-29.) Plaintiffs' Counsel developed a damages model for the unpaid wages claims and calculated the maximum potential liability exposure that Defendant faced on the claims as follows[3]:

    a.    Overtime wage damages in the amount of **$485,404.80** (after application of a 2x liquidation pursuant to FLSA (29 U.S.C. § 216)) upon adding 15 minutes per shift to each Agent's actual time records through December 31, 2019 due to the Agents' pre- and post-shift off-the-clock work activities;

    b.    Overtime wage damages in the amount of **$386,770.55** (after application of a 2x liquidation pursuant to FLSA (29 U.S.C. § 216)) upon adding one hour per week to each Agent's actual time records through December 31, 2019 due to Defendants' alleged unlawful practice of deducting Agents' compensation for time spent working during their unpaid lunch breaks and during periods when they are disconnected from the Auto Dialer; and

    c.    Prejudgment interest in the amount of **$58,871.84**, applying the 9% statutory rate of interest to the unliquidated damages total, calculated on a simple basis, as set forth in CPLR § 5004.

(**Ex B**, Stoops Decl., ¶ 26; **Ex C**, Johnston Decl., ¶ 26.)

Based on the above damages analysis, and in light of the factual and legal defenses identified herein and in the attached declarations of Kevin J. Stoops and Rod M. Johnston

---

[3] Of course, Defendant disagreed with this damages analysis and, as noted herein, has consistently denied any liability in this case.

(**Exhibits B-C**), the $244,000 settlement is approximately 26.21% of Defendant's $931,047.19

potential damages exposure. (*Id.*, ¶¶ 27.)

### III.    SETTLEMENT TERMS

The Settlement Agreement provides as follows:

#### A.    Value of the Settlement

Defendant has agreed to pay a Gross Settlement Amount of $244,000. (**Ex A**, Agreement, ¶

1.13.)  Defendant will pay the Settlement Amount into the Settlement Fund as follows:

a.   24 monthly payments of $6,000 per month, paid on or before the first of each month, with first payment beginning on the first of the month in the month immediately following the Final Approval Order, provided that the first month payment will catch up for any monthly payments from January 1, 2020 to the date of the first payment;

b.   $50,000 paid on or before December 1, 2020; and

c.   $50,000 paid on or before December 1, 2021.

(*Id.*, ¶ 1.14.) Participating Class Members will receive two settlement checks – the first check

will be mailed after the Court issues a Final Approval Order (in accordance with the timeframe

set forth in the Agreement) and the second check will be mailed after Defendant makes its final

payment to the Settlement Fund. (**Ex B**, Stoops Decl., ¶ 47; **Ex C**, Johnston Decl., ¶ 47.)

#### B.    Size of the Class and the Class Definition

The Class Members comprise "all of Defendant's current or former account

representatives and transfer agents who worked for Defendant at any time between April 1, 2016

through November 7, 2019." (**Ex A**, Agreement, ¶ 1.4.)

#### C.    Nature of the Payments and Notice, Exclusion, Objection Periods

This is a non-claims made, common fund settlement that contemplates the issuance of

settlement checks to all persons meeting the definition of a Class Member and who do not timely

opt out (each, a "Settlement Class Member"). (*Id.*, ¶ 1.22.) The Settlement Class Members, by

6

endorsing their Settlement Checks and depositing them, will opt into the settlement and release the

Released FLSA Claims. (*Id.*, ¶ 4.1(B).) Class Members who wish to be excluded from the settlement

must mail a written statement to the Settlement Claims Administrator (Simpluris) no later than 45

days after the original mailing of the Class Notice. (*Id.*, ¶ 2.4(B).) Class Members will also have 45

days from the mailing of the Class Notice to object to the settlement, and the Class Notice provides

details on these objection procedures. (*Id.*, ¶ 2.6; *see also* Class Notice, at **Ex 1** to the Agreement.)

### D.      <u>The Released Claims and Released Parties</u>

Settlement Class Members will release Defendant from the following claims:

> Settlement Class Members who do not opt out shall release Defendant and all
> related or affiliated entities and individuals from any and all claims, actions,
> demands, causes of action, suits, debts, obligations, damages, rights or liabilities,
> of any nature and description whatsoever, that are based on or reasonably related
> to the claims asserted in the Litigation, and specifically the following claims
> based on or reasonably related to claims asserted or alleged in the action
> ("Released Rule 23 Claims"): claims for unpaid wages or remuneration of any
> kind for services rendered (including claims for regular wages, overtime, final
> wages, and meal period and rest period premiums or any other form of
> compensation), interest, penalties (including waiting time penalties), claims
> pursuant to the federal Fair Labor Standards Act; claims under New York Labor
> Law and any of its accompanying rules or regulations; claims under other
> equivalent state laws, rules or regulations (including contract theories) in the
> states where Settlement Class Members resided when they worked for Defendant;
> and claims for attorneys' fees and costs. Released claims include all claimed or
> unclaimed compensatory, consequential, incidental, liquidated, punitive, and
> exemplary damages, restitution, interest, costs and attorneys' fees, injunctive or
> equitable relief, and any other remedies available at law or in equity allegedly
> owed or available to the putative class members arising or reasonably flowing
> from the claims asserted in the Litigation.

(**Ex A**, Agreement, ¶ 4.1 (A).)  In addition, Settlement Class Members, by endorsing and depositing

their Settlement Checks, will opt into the settlement and release Defendant from the following

claims:

> By signing and cashing the Settlement Checks, all Settlement Class Members
> forever and fully release Defendant from all FLSA claims asserted in the
> Litigation ("Released FLSA Claims"). The Released FLSA Claims include all
> FLSA claims for unpaid overtime wages, any related wage and hour claims,

liquidated damages, interest, penalties, and attorneys' fees and costs related to such claims relating to Settlement Class Members' employment with Defendant through the Effective Date.

(*Id*., ¶ 4.1 (B).) Finally, the named Plaintiffs will provide a general release, including a release of unknown claims. (*Id*., ¶ 4.1(C).)

### E.    Attorneys' Fees, Costs, Enhancement and Administration

The Gross Settlement Amount of $244,000 will be used to pay the following: (1) Class Member Settlement Awards; (2) the Settlement Claims Administrator's fees and costs (estimated amount: $25,000); (3) attorneys' fees sought by Class Counsel (one-third of the Gross Settlement Amount, or $81,333.33); (4) litigation costs sought by Class Counsel (not to exceed $10,000); (5) any other fees and costs associated with settlement (including the mediator's fees); and (6) Service Awards sought on behalf of the Plaintiffs (cumulative amount: $9,000, to be split evenly amongst the three named Plaintiffs). (*Id.*, ¶ 1.13; **Ex B**, Stoops Decl., ¶ 21; **Ex C**, Johnston Decl., ¶ 21.) The Gross Settlement Amount will not include Defendant's share of employer payroll taxes, which Defendant is responsible for paying itself. (**Ex A**, Agreement, ¶ 1.13.) Additionally, no amount of Defendant's settlement payment will be reverted to Defendant except as to funds from settlement checks that remain uncashed after 180 days from the date the check was mailed. (*Id*.)

### F.    The Net Distribution of Funds, Calculations and Payments to the Class

The Gross Settlement Amount minus the above allocations is the Net Settlement Fund. (*Id.*, ¶ 1.18.) This amount will increase with the addition of any un-awarded portions of the allocations. (*Id*., ¶ 3.4.) With an estimated **418** Class Members (i.e., assuming no Class Members opt out of the settlement), the average gross payment (i.e., before accounting for attorneys' fees and costs, settlement administrator fees and costs, and service awards) using a straight average is approximately **$583.73** per employee (before applicable (non-employer side) payroll deductions).

### G.    Notice Procedures

The Settlement Claims Administrator will send to all Class Members, via First-Class U.S. Mail, postage prepaid, the Court-approved Class Notice. (*Id.*, ¶ 2.4(B).) The Class Notice (**Ex 1** to the Agreement) was drafted to efficiently yet comprehensively describe the settlement. (**Ex B**, Stoops Decl., ¶ 48; **Ex C**, Johnston Decl., ¶ 48.) The Settlement Claims Administrator shall issue notice within 20 days of the Court's issuance of a Preliminary Approval Order. (**Ex A**, Agreement, ¶ 2.4(B).) Class Members have 45 days from the mailing of the Class Notice to opt out or object to the settlement. (*Id.*) The Class Notice and notice procedures are the best practicable way to provide notice to the Class Members. (**Ex B**, Stoops Decl., ¶ 48; **Ex C**, Johnston Decl., ¶ 48.)

### H.    Tax Consequences, Allocations and Uncashed Checks

The Settlement Claims Administrator will calculate the Settlement Awards based on the class information provided by Defendant, and will allocate such payments as follows:

> (Total of Settlement Awards ÷ Total Weeks Worked by All Settlement Class Members During the Class Period) **x** Total Weeks Worked by the Respective Settlement Class Member During the Class Period = Settlement Class Member's portion of Settlement Awards.

(**Ex A**, Settlement, ¶ 3.4(A).) For any Class Member whose Settlement Check is returned as undelivered, the Settlement Claims Administrator will take reasonable steps to locate the claimant and re-mail the check. (*Id.*, ¶ 2.10(C).)

## IV.    CONDITIONAL CERTIFICATION, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF THE SETTLEMENT AGREEMENT

### A.    Conditional Certification of the Rule 23 Class

Plaintiffs first request that the Court conditionally certify, for the purpose of settlement only, a class pursuant to Rule 23(b)(3) consisting of "all of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019." (*Id.*, ¶ 1.4.)

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Class certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims ... of the representative parties are typical of the claims ... of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If each of these four threshold requirements are met, class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b). In this case, class certification is proper under Rule 23(b)(3), which provides that a class action may be maintained where:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The party seeking class certification bears the burden of establishing each of these elements by a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008). Although the Court of Appeals has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 504 (S.D.N.Y. 1996), *citing Korn v. Franchard Corp.,* 456 F.2d 1206, 1208–09 (2d Cir. 1972), class certification should not be granted unless, after a "'rigorous analysis,'" the court is satisfied that Rule 23's requirements have been met. *Spagnola v. Chubb Corp.,* 264 F.R.D. 76, 92 (S.D.N.Y. 2010), *quoting In re Initial Pub. Offerings Secs. Litig.,* 471 F.3d 24, 33 (2d Cir. 2006). Doubts concerning the propriety of class certification should be resolved in favor of class certification. *See Levitt v. J.P. Morgan Secs., Inc.,* 710 F.3d 454, 464 (2d Cir. 2013) (less deference is given

10

to decisions denying class certification than to decisions granting certification).

### 1.    <u>Rule 23(a)'s Requirements</u>

#### a. *Numerosity*

Rule 23(a) requires that the members of the proposed class be "so numerous that joinder of all members is impracticable." Although precise calculation of the number of class members is not required, "numerosity is generally presumed when the prospective class consists of 40 members or more." *Alcantara v. CNA Mgmt., Inc.,* 264 F.R.D. 61, 64 (S.D.N.Y. 2009). Here, there are approximately 418 Class Members. (**Ex B**, Stoops Decl., ¶ 18; **Ex C**, Johnston Decl., ¶ 18.) Thus, the numerosity requirement is clearly met.

#### b. *Commonality*

Rule 23(a) also requires the existence of questions of law or fact common to the class. The Supreme Court has recently emphasized that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011), *quoting Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 157 (1982). "[S]ince '[a]ny competently crafted class complaint literally raises common 'questions' '", the court must assess whether the common questions are capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes, supra,* 564 U.S. at 350, *quoting* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 131–32 (2009). "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" *Fox v. Cheminova, Inc.,* 213 F.R.D. 113, 126 (E.D.N.Y .2003), *quoting Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997) (per *curiam*). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152,

162, 13 Civ. 2001(JPO), 2014 WL 1088001 at *8 (S.D.N.Y. Mar. 19, 2014), *quoting Freeland v. AT & T Corp.,* 238 F.R.D. 130, 140 (S.D.N.Y. 2006).

Here, there are at least two questions common to the putative Rule 23 class: (1) whether the Class Members performed compensable work activities before and after their shifts and during their unpaid lunch breaks in connection with booting up and logging into computer programs and applications and (2) whether Defendant failed to pay overtime wages with respect to the performance of such pre-, mid-, and post-shift work. (**Ex B**, Stoops Decl., ¶ 30; **Ex C**, Johnston Decl., ¶ 30.) Because Plaintiffs' claims and those of the putative Rule 23 class derive from the same alleged overtime and off-the-clock practices of Defendant, each of these questions will generate answers that will help resolve the claims in the class action. *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 252 (2d Cir. 2011); *accord Schear v. Food Scope Am., Inc.* 297 F.R.D. 114, 124 (S.D.N.Y. 2014); *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 127 (S.D.N.Y. 2011); *Prasker v. Asia Five Eight LLC,* 08 Civ. 5811(MGC), 2010 WL 476009 at *2 (S.D.N.Y. Jan. 6, 2010). Accordingly, the commonality requirement is met.

### c.  *Typicality*

Rule 23(a)'s third requirement, typicality, ensures that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani, supra,* 126 F.3d at 376, *quoting Gen. Tel. Co. v. Falcon, supra,* 457 U.S. at 157 n. 13, 102 S. Ct. 2364. The typicality requirement is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citation omitted).

Plaintiffs satisfy the typicality requirement of Rule 23(a) because they were employed by Defendant in the same positions and subjected to the same overtime and off-the-clock practices as members of the proposed Rule 23 class. (**Ex B**, Stoops Decl., ¶¶ 9, 30; **Ex C**, Johnston Decl., ¶¶ 9, 30.) Accordingly, typicality is met here as well.

### d. *Adequacy*

Pursuant to Rule 23(a)'s final requirement, "the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'" *In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242, 249 (2d Cir. 2011), *quoting Amchem Prods., Inc. v. Windsor, supra,* 521 U.S. at 625–26, 117 S.Ct. 2231. "Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Fox v. Cheminova, Inc., supra,* 213 F.R.D. at 127 (citations omitted).

Plaintiffs' Counsel is competent and experienced in wage and hour class actions. (**Ex B**, Stoops Decl., ¶¶ 4-6; **Ex C**, Johnston Decl., ¶¶ 4-6.) In light of their record in other cases and their able representation of Plaintiffs and the Class Members in this case, this Court should conclude that Plaintiffs' Counsel has and will adequately represent the interests of the class. In addition, Plaintiffs' Counsel represents that the named Plaintiffs have no conflicts with any of the Class Members and have actively participated in discovery and settlement negotiations. (*Id*., ¶¶ 43-44.) Accordingly, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### e. *The Implied Requirement of Ascertainability*

Ascertainability is not expressly required under the terms of Rule 23, but is an implied element of class certification. As explained by the late Hon. Harold Baer in *Fears v. Wilhelmina Model Agency, Inc.,* 02 Civ. 4911(HB), 2003 WL 21659373 at *2 (S.D.N.Y. July 15, 2003):

13

"[W]hile Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable [aggrieved] class has been implied by the courts." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.,* 209 F.R.D. 323, 336 (S.D.N.Y.2002) (internal quotes and citations omitted); *Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y.2003). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *MTBE Prods.,* 209 F.R.D. at 336. Membership should not be based on subjective determinations, such as the subjective state of mind of a prospective class member, but rather on objective criteria that are administratively feasible for the Court to rely on to determine whether a particular individual is a member of the class. *Id.* Further, the Court "must be able to make this determination without having to answer numerous fact-intensive inquiries." *Id.* at 336 n. 20 (quoting *Daniels v. City of New York,* 198 F.R.D. 409, 414 (S.D.N.Y.2001)).

*See also Manual for Complex Litigation* § 21.222 at 270 (4th ed. 2004) ("Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."). Here, Defendant's payroll records contain the names, pay rates and dates of employment of the Rule 23 Class Members. (**Ex B**, Stoops Decl., ¶ 18; **Ex C**, Johnston Decl., ¶ 18.) Because Plaintiffs can easily identify the Rule 23 class by reviewing Defendant's payroll records, the implied ascertainability requirement of Rule 23 is met.

### 2.    Rule 23(b)(3)'s Requirements

As explained above, Rule 23(b)(3) requires that a plaintiff seeking to represent a class establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. *Predominance*

The Court of Appeals for the Second Circuit explained the predominance requirement of Rule 23(b)(3) in *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002):

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). It is a more demanding criterion than the commonality inquiry under Rule 23(a). *Id.*

14

> at 623–24, 117 S.Ct. 2231. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof. [*In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001)].

*See also Myers v. Hertz Corp.,* 624 F.3d 537, 549 (2d Cir. 2010) ("Economies of time, effort, and expense in fully resolving each plaintiff's claim will only be served, and the predominance requirement satisfied, ... if the plaintiffs can show that some ... questions can be answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individual ones." (internal quotations marks, brackets and citations omitted)).

The predominance requirement is satisfied here because the class is unified by common factual allegations: (1) they performed compensable work activities before and after their shifts and during their unpaid lunch breaks in connection with booting up and logging into computer programs and applications and (2) they were not paid overtime with respect to the performance of such pre-, mid-, and post-shift work. (**Ex B**, Stoops Decl., ¶¶ 9, 30; **Ex C**, Johnston Decl., ¶¶ 9, 30.) The central issue in this litigation is whether Defendant had policies that denied its employees overtime in connection with the performance of pre-, mid- and post-shift boot-up and login activities. (*Id.*) Because Defendant's alleged practices applied to the putative Rule 23 class members uniformly, questions regarding the legality of those policies "are about the most perfect questions for class treatment." *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *Brown v. Kelly,* 609 F.3d 467, 484 (2d Cir. 2010) ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." (internal quotation marks & citations omitted)). Thus, predominance is met here.

### b. *Superiority*

Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, the court must balance "the advantages of a class action against those of alternative available methods of adjudication." *Anwar v. Fairfield Greenwich Ltd.,* 289 F.R.D. 105, 114 (S.D.N.Y. 2013). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: "the class members' interests in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already begun by ... class members;" "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and "the likely difficulties in managing a class action."

The superiority requirement is also met here. First, litigation by way of a class action is more economically sensible due to the Class Members' limited financial resources and the relatively modest size of any individual's recovery. A class action is likely the only vehicle by which all Class Members can, as a practical matter, adjudicate their Rule 23 state law claims. *Iglesias–Mendoza v. La Belle Farm, Inc., supra,* 239 F.R.D. at 374; *McBean v. City of New York,* 228 F.R.D. 487, 503 (S.D.N.Y. 2005). Second, Plaintiffs are unaware of any pending litigation by individual Class Members concerning this controversy, and, third, concentrating this litigation in the Northern District of New York is appropriate because the allegedly wrongful conduct occurred in this District. (*See* ECF No. 1, Complaint, ¶ 22.) Finally, class adjudication as opposed to multiple individual actions will conserve judicial resources.

Accordingly, this Court should conditionally certify pursuant to Rule 23(a) and (b)(3) a Rule 23 class of all of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019.

16

**B.**    <u>Appointment of Class Counsel</u>

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must ... appoint class counsel under Rule 23(g)." Plaintiffs' Counsel requests that this Court designate their firm, Sommers Schwartz, P.C. ("Sommers Schwartz"), as counsel for the Rule 23 class. Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel has vast experience litigating wage and hours cases and is knowledgeable concerning the applicable law. (**Ex B**, Stoops Decl., ¶¶ 4-6, 16, 23, 29, 44; **Ex C**, Johnston Decl., ¶¶ 4-6, 16, 23, 29, 44.) Moreover, Sommers Schwartz has represented the Plaintiffs in this suit from its inception, and, therefore, has expended substantial resources identifying and investigating the potential claims in the action. (*Id.*, ¶¶ 7, 16, 23, 29, 37, 44.) Finally, the prior work Sommers Schwartz has performed as lead or co-counsel in litigating and settling other wage and hour actions, (*see id*, ¶¶ 5-6), demonstrates the firm's commitment and financial ability to represent the Rule 23 class. Accordingly, Sommers Schwartz should be appointed as Class Counsel.

**C.**    <u>Preliminary Approval of the Settlement Agreement</u>

Plaintiffs next seek the preliminary approval of the Settlement Agreement, which would resolve the claims brought on behalf of the FLSA collective and the Rule 23 class.

Pursuant to Fed. R. Civ. P. 23(e), the settlement of a class action is not effective until judicially approved. Although there is a general policy favoring settlements, the court may

17

approve a class action settlement only if it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005), *citing D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

In assessing procedural fairness, there is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards–Cantave,* 588 F.3d 790, 803 (2d Cir. 2009), *quoting Wal–Mart Stores, Inc. v. Visa U.S.A., Inc., supra,* 396 F.3d at 116. In assessing whether a settlement is substantively fair, reasonable, and adequate, courts in this Circuit use the nine-factor test set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards–Cantave, supra,* 588 F.3d at 804.

Similarly, a settlement of an FLSA collective action is not effective unless it is judicially approved. *Wolinsky v. Scholastic Inc.,* 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) ("[A]n employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement."); *Bouzzi v. F & J Pine Rest., LLC,* 841 F.Supp.2d 635, 639 (E.D.N.Y .2012) ("The FLSA imposes strict limits on an employee's ability

to waive claims for fear that employers will coerce employees into settlement and waiver." (internal quotation marks & brackets omitted)). However, settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 476 (S.D.N.Y. 2013), *quoting McKenna v. Champion Intern. Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984). Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation. *Wolinsky v. Scholastic Inc., supra,* 900 F.Supp.2d at 335.

Preliminary approval is the first step in the settlement of a class action[4] whereby the court "must preliminarily determine whether notice of the proposed settlement ... should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2002) (internal quotation omitted).

> Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.,* Nos. 07 Civ. 8623(PAC) *et al.* [sic], 2009 WL 6615729, at *3 (S.D.N.Y. Nov.27, 2009) (citing Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (4th ed. 2002)). Nevertheless, courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (granting

---

[4] The principles concerning preliminary approval of class action settlements appear to apply with equal force to preliminary approval of FLSA settlements. *See, e.g., Davis v. J.P. Morgan Chase & Co.,* 775 F.Supp.2d 601, 607–08 (W.D.N.Y. 2011); *Johnson v. Brennan,* 10 Civ. 4712(CM), 2011 WL 1872405 at *1 (S.D.N.Y. May 17, 2011); *Clark v. Ecolab, Inc.,* 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729 at *3 (S.D.N.Y. Nov. 27, 2009).

preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir.1980); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness ... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *see also Girault v. Supersol 661 Amsterdam, LLC,* No. 11 Civ. 6835(PAE), 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (granting preliminary approval where the "proposed Settlement Agreement [was] within the range of possible settlement approval, such that notice to the Class [was] appropriate"); *Danieli v. IBM,* No. 08 Civ. 3688, 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted"). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Yuzary* [*v. HSBC Bank USA, N.A.*], 2013 WL 1832181, at *1 (internal quotation marks and citation omitted).

*Tiro v. Pub. House Invs., LLC,* 11 Civ. 7679(CM), 11 Civ. 8249(CM), 2013 WL 2254551 at *1 (S.D.N.Y. May 22, 2013).

Applying the foregoing principles, this Court should conclude, based on Plaintiffs' Memorandum of Law, the Declarations of Kevin J. Stoops and Rod M. Johnston, and the accompanying Settlement Agreement and Class Notice materials, that there is probable cause to believe that the proposed settlement is fair, reasonable and adequate.

Plaintiffs' Counsel contends that the Class Members are owed roughly $931,047.19 in unpaid wages, related penalties, and interest. (**Ex B**, Stoops Decl., ¶ 27; **Ex C**, Johnston Decl., ¶ 27.) An award of $244,000 is fair, reasonable and adequate because (1) the $244,000 settlement is approximately 26.21% of Defendant's $931,047.19 potential damages exposure and (2) even after attorneys' fees and litigation costs, service awards, and administrative costs, Class Members would receive nearly all of their actual damages (including liquidated damages) when computing claims equal to 5 minutes of off-the-clock work per shift per Class Member. (*Id.*) *See Acosta v. Evergreen Moneysource Mortg. Co.*, 2:17-CV-00466-KJM-DB, 2019 WL 6051117, at

20

*11 (E.D. Cal. Nov. 15, 2019) (finding settlement value fair where the proposed settlement amount for 75 class members was $350,000, which was approximately 14.4% to 21.3% of the maximum recovery if the class were successful in maintaining class certification and at trial).

Additionally, the award provides Class Members a guaranteed recovery and removes the uncertainty that litigation necessarily entails. Defendant presented several non-frivolous arguments at the mediation that might have reduced Plaintiffs' eventual damages award or resulted in a verdict for Defendant. (**Ex B**, Stoops Decl., ¶¶ 24-25; **Ex C**, Johnston Decl., ¶¶ 2-25.) Finally, the modest service awards to the named Plaintiffs, administrative costs, and attorneys' fees sought here are routinely approved in district courts of this Circuit. *See, e.g., Chavarria v. N.Y. Airport Serv., Inc.,* 875 F.Supp.2d 164, 177-79 (E.D.N.Y. 2012) (plaintiffs' counsel was entitled to an attorney fee award of $45,250, which was one-third of the amount of the settlement of a class action alleging unpaid overtime compensation in violation of the FLSA and New York law); *Morris v. Affinity Health Plan, Inc., supra,* 859 F.Supp.2d at 622 (In certifying class and collective actions for settlement purposes, class counsel's requested fee of $833,333.33, which represented one-third of settlement fund obtained for employer's violations of FLSA and New York law, was reasonable). Furthermore, the settlement was not the result of any collusion between counsel. (**Ex B**, Stoops Decl., ¶¶ 29-30; **Ex C**, Johnston Decl., ¶¶ 29-30.)

Finally, the Settlement Agreement has all the earmarks of an arm's length transaction between opposing parties. The Settlement Agreement was reached by experienced counsel after an investigation of the claims and defenses and contested negotiations. (*Id.*, ¶¶ 12, 16, 23, 29-30.) At the mediation, counsel for both sides demonstrated a mastery of the evidence and the legal principles and zealously represented their clients. (*Id.*, ¶¶ 29.) In light of counsels' experience and conduct in this action, this Court should find that the Settlement Agreement is

21

fair, reasonable, and adequate. Accordingly, Plaintiffs' Preliminary Approval Motion should be granted and notice to the Class Members is appropriate.

**D.    Plaintiffs' Proposed Notice**

Finally, Plaintiffs seek approval of the proposed Class Notice accompanying their motion. (*See* **Ex 1** to the Agreement.) The Settlement Claims Administrator will mail the proposed Class Notice to the Class Members at each individual's last known mailing address. (**Ex A**, Agreement, ¶ 2.4(A).) Additionally, if notices are returned as undeliverable, the claims administrator will use additional information provided by Defendant to locate the addressees of such notices and will mail another copy to those individuals. (*Id.*, ¶ 2.4(B).)

"Where, as here, the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436, 448 (S.D.N.Y. 2004). Pursuant to Rule 23(c)(2)(B), "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."). The notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

A thorough review of the proposed Class Notice (*see* **Ex 1** to the Agreement) shows that the form and content of the Notice comports with the aforementioned seven requirements of Rule

23(c)(2)(B). Hence, the proposed Class Notice should be approved.

## V.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

**A.    The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval**

### 1.    Attorney's Fees

The Settlement Agreement allocates up to one-third of the Gross Settlement Amount, or $81,333.33, to Plaintiffs' Counsel for attorneys' fees. (**Ex A**, Agreement, ¶ 3.2 (A).) Prior to the final approval hearing, Plaintiffs' Counsel will request approval of their fees and costs and will provide detailed billing records and invoices documenting hours worked and costs incurred.

"The Second Circuit has authorized district courts to employ a percentage-of-the-fund method when awarding fees in common fund cases, although the Circuit has encouraged district courts to cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent. It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *In re Giant Interactive Grp., Inc. Sec. Litiq.,* 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (citations and quotation marks omitted.) "The trend in this Circuit is toward the percentage method." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc., supra,* 396 F.3d at 121.

Applying the lodestar method as a "cross check," *see Goldberger,* 209 F.3d at 50, the Court should find that the one-third percentage sought by Plaintiffs' Counsel is reasonable. To date, Plaintiffs' Counsel has incurred over 140 hours and over $60,000 in fees, resulting in a lodestar multiplier of 1.36, (**Ex B**, Stoops Decl., ¶ 37; **Ex C**, Johnston Decl., ¶ 37), which falls squarely within the range granted by courts. *See Beckman v. KeyBank, N.A., supra,* 293 F.R.D. at 481 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases,

even higher multipliers.") (citing cases).

    **2.**     **Expenses and Costs**

    Plaintiffs' Counsel has also incurred $3,560.64 in litigation costs, not including costs that will be incurred in effectuating the settlement of this matter, including travelling to and appearing at the preliminary and final approval hearings, and not including mediation fees of $1,175. (**Ex B**, Stoops Decl., ¶ 37; **Ex C**, Johnston Decl., ¶ 37.) "It is well-settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (citations omitted). Plaintiffs' Counsel will request reimbursement of litigation costs and will provide itemizations of the incurred expenses as part of Plaintiffs' application for attorneys' fees and costs.

    **3.**     **Named Plaintiff Service Awards**

    Plaintiffs request service awards of $3,000 each. "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A., supra,* 293 F.R.D. at 483 (citation omitted). "It is important to compensate plaintiffs for the time they spend and the risks they take." *Id.* (citation omitted).

    Here, Plaintiffs' actions exemplify the very reason courts award service payments. Throughout this lawsuit, Plaintiffs regularly made themselves available to communicate with Plaintiffs' Counsel and assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information and documents regarding the nature of their duties and

responsibilities, the factual details concerning the off-the-clock work, and other information relevant to the Class Members' claims. (**Ex B**, Stoops Decl., ¶¶ 43-44; **Ex C**, Johnston Decl., ¶¶ 43-44.) Further, Plaintiffs provided their declarations in support of their conditional certification motion, produced relevant documents and provided Plaintiffs' Counsel with invaluable information regarding Defendant's business operations and relevant policies and procedures. (*Id.*) For these reasons, a service award in the amount of $9,000 (split equally amongst the three named Plaintiffs) is abundantly reasonable and should be approved.

The $9,000 total in service awards represents approximately 3.59% of the settlement fund. This is well within the range of service awards approved by other courts in this Circuit. *See, e.g., Beckman v. Keybank, N.A., supra,* 293 F.R.D. at 483 (awarding incentive payments totaling 1.7% of $4,900,000 FLSA settlement); *Johnson v. Brennan,* 10 Civ. 4712(CM), 2011 WL 4357376 at *2, 21 (S.D.N.Y. Sept. 16, 2011) (awarding incentive payments totaling 9.1% of $440,000 FLSA/NYLL settlement); *deMunecas v. Bold Food, LLC,* 09 Civ. 0440(DAB), 2010 WL 3322580 at *1, *11 (S.D.N.Y. Aug. 23, 2010) (awarding incentive payments totaling 3.1% of $800,000 FLSA/NYLL settlement).

## VI.    CONCLUSION

Based on the foregoing, the parties request that the Court grant the instant motion and enter an Order consistent with the Proposed Preliminary Approval Order attached as **Exhibit D**.

Dated: January 24, 2020

/s/ *Rod M. Johnston*
Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs and the putative*
*Class/Collective action members*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 24, 2020, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*
Annette DeCoste

26