**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals,<br><br>              Plaintiffs,<br><br>v.<br><br>**RESOURCE MARKETING CORP., LLC**,<br><br>              Defendant. | Case No.:  1:19-cv-00386-MAD-CFH<br><br>HON. Judge Mae A. D'Agostino<br><br><br>Hearing Date: July 27, 2020 |

**PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE
SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND
<u>APPROVAL OF SERVICE AWARDS</u>**

Plaintiffs Jerry Baudin, Josephine Duffney and Karishma Persaud ("Plaintiffs") hereby request that the Court (1) certify the settlement class; (2) grant final approval of the Settlement Agreement; (3) approve the FLSA settlement; and (4) approve service awards for the named Plaintiffs in the amount of $3,000 each, as further set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Approval of Service Awards, and the Declarations of Kevin J. Stoops and Rod M. Johnston, filed concurrently with this Motion.

Dated: July 16, 2020

/s/ *Rod M. Johnston*
Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs and the putative*
*Class/Collective action members*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2020, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*
Annette DeCoste

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals,<br><br>         Plaintiffs,<br><br>v.<br><br>**RESOURCE MARKETING CORP., LLC**,<br><br>         Defendant. | Case No.:  1:19-cv-00386-MAD-CFH<br><br>HON. Judge Mae A. D'Agostino<br><br><br>Hearing Date: July 27, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND <u>APPROVAL OF SERVICE AWARDS</u>**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................... iii

INTRODUCTION .......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 1

I.      Factual Allegations .......................................................................................... 1

II.     Overview of Investigation ............................................................................... 2

III.    History of Litigation ....................................................................................... 3

IV.     Settlement Negotiations .................................................................................. 4

V.      CAFA Notice ................................................................................................... 5

SUMMARY OF THE SETTLEMENT TERMS ......................................................... 5

I.      The Settlement Fund ........................................................................................ 5

II.     Eligible Employees .......................................................................................... 5

III.    Releases ........................................................................................................... 5

IV.     Allocation Formula .......................................................................................... 6

V.      Attorneys' Fees and Litigation Costs .............................................................. 6

VI.     Settlement Claims Administration ................................................................... 6

ARGUMENT ................................................................................................................. 7

I.      The Settlement Class Meets the Legal Standard for Class Certification ......... 7

        A.      Numerosity ........................................................................................... 8

        B.      Commonality ........................................................................................ 8

        C.      Typicality .............................................................................................. 9

        D.      Adequacy of the Named Plaintiffs ...................................................... 10

        E.      Certification Is Proper Under Rule 23(b)(3) ...................................... 11

        1.      Common Questions Predominate .......................................................... 11

        2.      A Class Action is a Superior Mechanism ............................................. 12

II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ........................................................................................ 13

    A.     The Proposed Settlement is Procedurally Fair ................................................ 13

    B.     The Proposed Settlement is Substantially Fair .................................................. 15

        1.      Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ................................................................................. 15

        2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ......... 16

        3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ............................... 17

        4.      Plaintiffs Would Face Real Risks in the Case Proceeded (*Grinnell* Factors 4 and 5) .............................................................................. 18

        5.      Maintaining the Class Through Trial Would Not be Simple (*Grinnell* Factor 6) ................................................................................. 19

        6.      Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) .......................................................... 20

        7.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................................................................ 20

    C.     Certification is Proper Under Rule 23(e)(2) ..................................................... 22

        1.      The Class Representative and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A-B) ............................................ 22

        2.      The Relief Provided to the Class is Adequate (Rule 23(e)(2)(C)) ......... 23

        3.      The Proposed Settlement Treats Class Members Equitably (Rule 23(e)(2)(D) .......................................................................................... 24

III.   Approval of the FLSA Settlement is Appropriate Under Federal Law .......................... 24

IV.   The Requested Service Awards Are Reasonable and Should Be Approved .................. 25

A.    Plaintiffs Assumed Significant Risks ................................................................ 25

B.    Plaintiffs Expended Significant Time and Effort .............................................. 27

C.    The Ultimate Recovery Supports the Requested Service Awards ...................... 27

CONCLUSION ............................................................................................................................. 28

# INDEX OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................12, 13

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)............................ 28

*Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14 (E.D.N.Y. 2019).................................. 23

*Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513 (Cal. 2012) .................................................... 23

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) ........................................................................... 33

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y.
   May 22, 1990) ...................................................................................................................... 24

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614
   (S.D.N.Y. Jun. 7, 2011) ....................................................................................................... 17

*Christine Asia Co. v. Yun Ma*, No. 15-MD-02631, 2019 WL 5257534 (S.D.N.Y.
   Oct. 16, 2019)....................................................................................................................... 28

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......................................... passim

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL
   1948198 (S.D.N.Y. May 11, 2010) ......................................................................................... 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)...................................... 8

*Cortez v. BestBuy Stores, LP*, No. CV 11–5053, 2012 WL 255345 (C.D. Cal.
   Jan.25, 2012) ........................................................................................................................ 22

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) ................................... 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ....................................................13, 14

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)....................................................... 7

*Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y.
   Nov. 29, 2010)...................................................................................................................... 17

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29,
   2007)..................................................................................................................................... 11

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)....................................... passim

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)................................................................. 9

iv

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ................................................................. 13

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650
 (S.D.N.Y. Oct. 28, 2011) .................................................................................................30, 31

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 14

*In re Am. Bank Note Holographies, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................... 27

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y.
 2000) ............................................................................................................................... passim

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002).................................. 16

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ......................................................... 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ 10240, 2007 WL
 2230177 (S.D.N.Y. July 27, 2007) ........................................................................................ 16

*In re Interpublic Sec. Litig.*, 2004 WL 2397190....................................................................... 17

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969)........................................................ 21

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997)................................. 21

*In re Parking Heaters, Antitrust Litig.*, 15MC0940DLIJO, 2019 WL 8137325
 (E.D.N.Y. Aug. 15, 2019)....................................................................................................... 26

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620
 (S.D.N.Y. July 31, 2008) ....................................................................................................... 16

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)....................12, 13

*In re Vitamin C Antitrust Litig.*, 06-MD-1738 BMC JO, 2012 WL 5289514
 (E.D.N.Y. Oct. 23, 2012)........................................................................................................ 27

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)....................................... 20

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16,
 2011)..............................................................................................................................11, 14, 21

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986)...................... 9

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20,
 2010)........................................................................................................................................ 32

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................ 29

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................ 19

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................................. 8, 10

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y.
  Dec. 13, 2011) .......................................................................................................... 20

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005) ............................................... 12

*McKenna v. Champion Intern. Corp.*, 747 F.2d 1211 (8th Cir. 1984), *abrogated on
  other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ....................... 28

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................... 28

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) ....... 9, 10, 11, 14

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) .......................................................................... 24

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 24

*Ordonez v. Radio Shack*, 2013 WL 210223 (C.D. Cal. 2013) .................................................... 22

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ 4030, 2012 WL 2384419 (S.D.N.Y.
  Jun. 22, 2012) ....................................................................................................... passim

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL
  532960 (S.D.N.Y. Feb. 9, 2010) ................................................................................ 30, 31, 32

*Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122 (D. Colo. 2019).................... 22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................. 8

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y.
  Aug. 16, 2011) ........................................................................................................ 14, 15, 32

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726
  (S.D.N.Y. May 15, 2003).......................................................................................... 19

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................................................... 10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ............................................... 12

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y.
  Apr. 16, 2012) ........................................................................................................ 9, 30, 31, 32

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ..................................... 31

*Spann v. AOL Time Warner, Inc.*, No. 02 Civ 8238, 2005 WL 1330937 (S.D.N.Y.
  June 7, 2005) .......................................................................................................... 15

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ...................................................................................................... 13

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ................................................................................ 11, 15, 32

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ....................................................................................... 21, 30

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................ 13, 14

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................................................................................... 19, 32

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................. 19

*Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) ...................................... 23

**Other Authorities**

28 U.S.C. § 1715(d) ................................................................................................... 5

29 U.S.C. § 216(b) ................................................................................................ 2, 3

5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018) ........................... 24

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................................... 7, 11

Fed. R. Civ. P. 23(a)(1) .................................................................................... 8

Fed. R. Civ. P. 23(a)(4) ................................................................................. 10

Fed. R. Civ. P. 23(b) ....................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ........................................................................... 8, 11, 12

Fed. R. Civ. P. 23(e) ..................................................................................... 13

Fed. R. Civ. P. 23(e)(2) ................................................................................. 22

Fed. R. Civ. P. 23(e)(2)(A)-(B) ......................................................................... 22

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................. 23

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 24

Fed. R. Civ. P. 23(e)(3) .............................................................................................22, 23

## INTRODUCTION

Plaintiffs Jerry Baudin, Josephine Duffney and Karishma Persaud ("Plaintiffs") submit this Memorandum of Law in support of their Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Approval of Service Awards. The parties' $244,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Ex. A;[1] (3) approving the FLSA Settlement; and (4) approving the named Plaintiffs' service awards.

On January 29, 2020, the Court preliminarily approved the settlement, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing. Doc. 42. The 497 Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Two Class Members opted out of the settlement, and there have been no objections. Ex. B (Declaration of Jarrod Salinas ("Salinas Decl.")) ¶ 9. With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Plaintiffs and Class Members are 497 current and former account representatives and transfer agents ("Agents") who worked for Defendant Resource Marketing Corp., LLC

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Rod M. Johnston ("Johnston Decl.").

("Defendant") at any time between April 1, 2016 through November 7, 2019.[2] Plaintiffs alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and New York wage and hour law by failing to pay Agents for "off-the-clock" overtime hours. *See* Class/Collective Action Complaint (Doc. 1) ("Complaint"); Declaration of Kevin J. Stoops ("Stoops Decl.") ¶ 4; Johnston Decl. ¶ 4.

## II.    <u>Overview of Investigation</u>

Before and during the formal litigation of this action, Plaintiffs conducted a thorough investigation into the merits of the claims and defenses. Stoops Decl. ¶ 9; Johnston Decl. ¶ 9. Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, their damages, and the propriety of class/collective certification. *Id*. Plaintiffs' counsel interviewed Plaintiffs and several other workers to determine their hours worked, wages paid, the nature of their job duties, and other information relevant to their claims. Stoops Decl. ¶ 10; Johnston Decl. ¶ 10. Plaintiffs also conducted in-depth background research on Defendant, including client interviews and reviewing public documents, to obtain information on Defendant's corporate structure, operations and facilities. Stoops Decl. ¶ 11; Johnston Decl. ¶ 11. Plaintiffs also utilized client interviews, time and pay records, and publicly available information to determine, among other things, the nature of the Class Members' job duties and the amount of off-the-clock time that they worked. *Id*. Plaintiffs also provided detailed declarations (Docs. 11-4, 11-5 and 11-6) regarding their hours worked, wages paid, and the nature of their job duties in connection with the preparation and filing of Plaintiffs' Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (Doc. 11) ("Motion for Conditional Certification"). Stoops Decl. ¶ 12; Johnston Decl. ¶ 12.

---

[2] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

III.    <u>**History of Litigation**</u>

On April 1, 2019, Plaintiffs filed their Complaint (Doc. 1) against Defendant, pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 ("Rule 23"), in the United States District Court for the Northern District of New York, on behalf of themselves and others similarly situated. Stoops Decl. ¶ 13; Johnston Decl. ¶ 13. Plaintiffs alleged that they and the Class Members were employed by Defendant as Agents at Defendant's Clifton Park, New York call center facility and were required to perform unpaid off-the-clock overtime work before and after their scheduled shifts and during their unpaid meal breaks, such as booting up and shutting down computers and logging into computer software programs and applications that were integral and necessary for the performance of their work. *Id.* According to Plaintiffs, Agents were not compensated for this time because Defendant trained and instructed the Agents not to record this time on their timesheets. *Id.* Plaintiffs sought to recover unpaid overtime wages arising from the alleged off-the-clock overtime work, as well as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs. *Id.*

With respect to the alleged off-the-clock overtime work, Plaintiffs alleged that Defendant failed to pay Agents for the following tasks:

a.    At the beginning of each shift in connection with: locating workstations, starting-up and logging into the computers, systems and programs utilized during their shift, and reading e-mails – ***averaging 5 to 10 minutes per shift***;

b.    During their meal periods in connection with logging back into Defendant's programs and systems – ***taking up to 5 minutes per shift***; and

c.    At the end of each shift in connection with: shutting-down and logging out of computers, systems and programs – ***averaging 2 to 3 minutes per shift***.

Complaint (Doc. 1) ¶¶ 52-63. Additionally, Plaintiffs alleged that Defendant refused to compensate its Agents for any time spent disconnected from Defendant's auto-dialing system. *Id.* ¶ 8. According to Plaintiffs, Defendant unlawfully deducted this compensable time – ***averaging***

3

*up to one hour per week* – from the Agent's timesheets. *Id*. ¶¶ 64-74.

Defendant answered the Complaint on June 18, 2019. Doc. 20; Stoops Decl. ¶ 14; Johnston Decl. ¶ 14. Defendant denied all liability, damages, and that class or collective action certification was proper. *Id*. On April 15, 2019, Plaintiffs filed their Motion for Conditional Certification (Doc. 11), which Defendant indicated it would oppose. Stoops Decl. ¶ 15; Johnston Decl. ¶ 15.

## IV.    <u>Settlement Negotiations</u>

In lieu of briefing conditional certification, the parties engaged in settlement discussions, including the exchange of payroll records and data, with the goal of settling, rather than litigating, the dispute. Stoops Decl. ¶ 16; Johnston Decl. ¶ 16. In preparation for mediation, the parties exchanged targeted discovery aimed at allowing them to perform damages calculations. Stoops Decl. ¶ 17; Johnston Decl. ¶ 17. As part of this exchange, Defendant produced data showing the number of Class Members employed as Agents, average earnings, and number of weeks worked. *Id*. Plaintiffs performed damages calculations based on the data Defendant provided. *Id*.

On November 7, 2019, the parties attended a mediation session in Albany, New York with William G. Bauer, Esq., a well-known and experienced mediator. Stoops Decl. ¶ 18; Johnston Decl. ¶ 18. The parties reached a successful settlement during the mediation held on November 7, 2019 and immediately began working to formalize the settlement terms agreed upon at the mediation and preparing a motion for Court approval of the settlement. *Id*. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement. Stoops Decl. ¶ 19; Johnston Decl. ¶ 19; Ex. A (Settlement Agreement).

On January 24, 2020, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Setting Final Approval Hearing (Doc. 41)

(the "Motion for Preliminary Approval"), in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class. Stoops Decl. ¶ 21; Johnston Decl. ¶ 21. On January 29, 2020, the Court granted Plaintiffs' Motion for Preliminary Approval. Doc. 42; Stoops Decl. ¶ 22; Johnston Decl. ¶ 22.

## V.    **CAFA Notice**

Defendant sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on February 27, 2020. *See* 28 U.S.C. § 1715(d); Stoops Decl. ¶ 23; Johnston Decl. ¶ 23. The 90-day CAFA notice period concluded on May 27, 2020. *Id.*

## SUMMARY OF THE SETTLEMENT TERMS

### I.    **The Settlement Fund**

The settlement establishes a Gross Settlement Amount of $244,000 to settle claims against Defendant (the "Fund"). Ex. A (Settlement Agreement) § 1.13. The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs. *Id.* Defendant will pay all applicable employer-side payroll taxes. *Id.* § 3.5(C).

### II.    **Eligible Employees**

Class Members who are entitled to receive payments from the Fund include all of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019. *Id.* § 1.4.

### III.    **Releases**

All Class Members who sign and cash a Settlement Check or who do not timely opt out of the settlement will release all state and federal wage and hour claims. *Id.* § 4.1 (A)-(B). In addition, Plaintiffs will provide a general release, including a release of unknown claims. *Id.* § 4.1(C).

## IV.    Allocation Formula

Class Members will be paid pursuant to an allocation formula based on the number of weeks they worked during the Class Period. *Id.* § 3.4. The Settlement Claims Administrator will calculate the Settlement Awards based on the class information provided by Defendant, and will allocate such payments as follows:

> (Total of Settlement Awards ÷ Total Weeks Worked by All Settlement Class Members During the Class Period) **x** Total Weeks Worked by the Respective Settlement Class Member During the Class Period = Settlement Class Member's portion of Settlement Awards.

*Id.* For any Class Member whose Settlement Check is returned as undelivered, the Settlement Claims Administrator will attempt to locate the claimant and re-mail the check. *Id.* § 2.10(C). Any uncashed settlement checks remaining in the Fund 180 days after the check was mailed will revert to Defendant. *Id.* § 1.13.

## V.    Attorneys' Fees and Litigation Costs

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") simultaneously with this Motion.

## VI.    Settlement Claims Administration

The parties retained Simpluris to serve as the Settlement Claims Administrator ("Claims Administrator"). Stoops Decl. ¶ 30; Johnston Decl. ¶ 30. The Claims Administrator's fees of $25,000 will be paid from the Fund. Ex. A (Settlement Agreement) § 1.13.

On March 11, 2020, the Claims Administrator mailed the Court-approved Class Notice ("Notice") to 497 Class Members whose names and addresses were provided by Defendant. Ex. B (Salinas Decl.) ¶ 7.[3] If a Class Member's Notice was returned as undeliverable and without a forwarding address, the Claims Administrator performed an advanced address search (i.e., skip

---

[3] A sample Notice is attached as Ex. 1 to the Salinas Declaration.

trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id.* Through the advanced address searches, the Claims Administrator was able to locate 75 updated addresses and promptly mailed Notices to those updated addresses. *Id.* Ultimately, 16 Class Member's Notices were undeliverable because the Claims Administrator was unable to locate a current address. *Id.*

The Notice advised Class Members of their right to object to or exclude themselves from the settlement, and explained how to do so. *Id.* ¶ 4, Ex. 1 (Notice) §§ VI & VII. To date, there have been no objections, and only two Class Members (representing 0.40% of the Settlement Class) have opted out of the settlement. Ex. B (Salinas Decl.) ¶ 9.

## ARGUMENT

## I.      The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On January 24, 2020, the Court preliminarily certified the settlement class. Doc. 41. The Court should now grant final certification because all the requirements of Rule 23 are met. Plaintiffs respectfully request that the Court certify the following class for purposes of effectuating the settlement:

> All of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the

class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

A.    **Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members…." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is easily satisfied here because there are approximately 497 Class Members. Ex. B (Salinas Decl.) ¶ 7.

B.    **Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. Even where state and federal wage and hour claimants do not share "exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar

8

allegations, which give rise to the same or similar legal arguments." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012).

This case involves numerous common issues. Plaintiffs and Class Members all bring identical claims, namely, that Defendant failed to pay them overtime wages for hours worked "off the clock," in violation of the FLSA and New York wage and hour law. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the … [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and … whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked").

## C.    Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Defendant failed to pay Plaintiffs and Class Members overtime wages for hours worked "off the clock" pursuant to the same company policies and practices.

Plaintiffs shared the same job titles and had the same job duties as Class Members. They also claim the same injuries as do Class Members – that Defendant failed to properly pay them for off-the-clock overtime hours worked. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement. *See Morris*, 859 F. Supp. 2d at 616 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Frank*, 228 F.R.D. at 182 (typicality requirement satisfied where "all class members … allege that Kodak failed to pay them … overtime wages for hours worked in excess of forty per week during the relevant time period").

## D.   Adequacy of the Named Plaintiffs

Plaintiffs are adequate class representatives because they have "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, there is no evidence that the interests of Plaintiffs and the Class Members are at odds. *See Morris*, 859 F. Supp. 2d at 616 (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

E.    **Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

1.    **Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole … predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and common legal theory – that Defendant violated federal and state wage and hour laws by failing to pay them for off-the-clock overtime hours – predominates over any factual or legal variations among Class Members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of

overtime wages"). Plaintiffs therefore satisfy Rule 23(b)(3).

### 2.    A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. *See Johnson*, 2011 WL 4357376, at *7; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because all the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden

---

[4] Whether the case would be manageable as a class action at trial is inconsequential in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor … when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

## II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification, … it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### A.    The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced

employment law mediator); *Reyes*, 2011 WL 4599773, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, engaged in substantial informal discovery, and participated in extensive settlement negotiations with Defendant. Stoops Decl. ¶¶ 9-12; Johnston Decl. ¶¶ 9-12. The Parties attended an all-day mediation with an experienced employment law mediator on November 7, 2019, during which they engaged in a vigorous exchange regarding their respective claims and defenses, and were ultimately able to resolve the case. Stoops Decl. ¶¶ 18 & 20; Johnston Decl. ¶¶ 18 & 20. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a detailed final settlement agreement including all terms. Stoops Decl. ¶ 19; Johnston Decl. ¶ 19; Ex. A (Settlement Agreement). At all times during the settlement process, the parties negotiated on an arm's-length basis. Stoops Decl. ¶ 20; Johnston Decl. ¶ 20. These arm's-length negotiations involved counsel and a mediator well versed in wage and hour law, raising a presumption that the settlement meets the requirements of due process. *See Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *3 (S.D.N.Y. Jun. 22, 2012); *Wal-Mart Stores*, 396 F.3d at 116.

14

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.[5] The parties here acted responsibly in settling the case in the early stages of litigation. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

**B.      The Proposed Settlement Is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. All the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

**1.      Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems

---

[5] *See Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception, with 497 Class Members and claims under federal and state law. Ex. B (Salinas Decl.) ¶ 7.

Further litigation would cause additional expense and delay. Before agreeing to engage in formal settlement negotiations, Plaintiffs filed their Motion for Conditional Certification (Doc. 11), which Defendant indicated it would oppose. Stoops Decl. ¶ 15; Johnston Decl. ¶ 15. The process of briefing conditional certification, attending oral argument, waiting for the Court to issue a decision, and, if granted, the process of sending notice to the collective action members would take many, many months to complete. After the close of the opt-in period, extensive discovery would be required to establish liability and damages and for the parties to collect the necessary evidence and testimony in support of their class certification/decertification motions. In addition, Defendant would very likely move to decertify any certified class or collective and for summary judgment on the issue of liability, while Plaintiffs would move for summary judgment on one or more of Defendant's asserted defenses. If the Court denied the motions, a fact-intensive trial would follow. A trial would be lengthy and complex and consume tremendous time and resources for all parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members promptly and efficiently. Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2.    <u>The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).</u>

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,

No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notice sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award. Ex. B (Salinas Decl.), Ex. 1 (Notice). The Notice also informed Class Members of their right to object to or exclude themselves from the settlement and explained how to do so. Ex. B (Salinas Decl.), Ex. 1 (Notice) §§ VI & VII. To date, two Class Members have opted out of the settlement, and there have been no objections. Ex. B (Salinas Decl.) ¶ 9. Class Counsel has also communicated with numerous Class Members who have reacted very positively to the settlement. Stoops Decl. ¶ 31; Johnston Decl. ¶ 31. This favorable response demonstrates that the class approves of the settlement and supports final approval.[6]

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough informal discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement …[, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard. Plaintiffs' Counsel conducted an extensive

---

[6] *See Palacio*, 2012 WL 2384419, at *3 (where no class members objected to or opted out of the settlement, finding that favorable response weighed in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 7 of 2,025 class members submitted timely objections and 2 requested exclusion).

investigation of the claims and defenses before filing the case. Stoops Decl. ¶¶ 9-12; Johnston Decl. ¶¶ 9-12. To allow the parties to perform damages calculations in preparation for mediation, the parties exchanged targeted discovery, including data showing the number of Class Members employed as Agents, average earnings, and number of weeks worked. Stoops Decl. ¶ 17; Johnston Decl. ¶ 17. This discovery was more than sufficient to allow the parties to thoroughly assess the merits and risks of the case and to calculate damages. *See, e.g.*, *Palacio*, 2012 WL 2384419, at *4 (granting final approval where parties conducted informal discovery, but no depositions were taken); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (same); *Johnson*, 2011 WL 4357376, at *9-10 (same). This factor therefore favors final approval.

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to prove that they and the Class Members worked overtime hours for which they were not compensated, and that Defendant knew or should have known that this work was being performed. Plaintiffs also would have to overcome Defendant's defense that Class

Members' alleged off-the-clock work was *de minimis*. While Plaintiffs believe that they could ultimately establish Defendant's liability and defeat its defenses, this would require significant factual development, and there is no guarantee that Plaintiffs would ultimately prevail. For example, a Colorado district court recently held that a student loan servicing agency call center representatives' pre-shift activities of setting up computers and loading the relevant programs to become call-ready, which took a few seconds or minutes of work beyond the scheduled working hours, were *de minimis* and thus non-compensable under the FLSA. *Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1141 (D. Colo. 2019). Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of final approval.

### 5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class/collective certification and maintaining both conditional and class certification through trial is also present. The Court has not certified either an FLSA collective or a Rule 23 class, and the parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing. In opposing class or collective certification, Defendant would likely argue that differences among Class Members as to the amount of alleged off-the-clock work and other individualized questions preclude class/collective certification. Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these.[7] In addition, after the close of discovery, Defendant would likely move to

---

[7] *See, e.g.*, *Ordonez v. Radio Shack*, 2013 WL 210223 at *8 (C.D. Cal. 2013) (denying certification because "[p]laintiff offer[ed] insufficient evidence that any alleged off-the-clock work was due to a standardized employment practice, rather than a product of the vagaries of the store an employee worked in, the time of year, or the manager who was in charge."); *Cortez v. BestBuy Stores, LP,* No. CV 11–5053, 2012 WL 255345 at *9 (C.D. Cal. Jan.25, 2012) (denying

decertify any class or collective. *See Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action). Risk, expense, and delay permeate such processes. Settlement eliminates this risk, expense, and delay. This factor favors final approval.

### 6.    Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is some evidence here that Defendant could not withstand a greater judgment, as the Settlement Agreement calls for 24 monthly payments of $6,000 per month. Ex. A (Settlement Agreement) § 1.14. However, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is, at best, neutral and does not preclude the Court from granting final approval.

### 7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Risks of Litigation (*Grinnell* Factors 8 and 9).

Defendant has agreed to settle this case for a substantial amount, $244,000. The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a

---

certification where there was no evidence of a common policy of off-the-clock work); *Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513, 544 (Cal. 2012) (denying certification of off-the-clock claim where "no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether Brinker knew or should have known of their work.").

settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." By Class Counsel's estimation, the settlement amount of $244,000 represents approximately 26.21% of Defendant's $931,047.19 potential damages exposure, assuming Plaintiffs were to prevail on all of their claims and received a damages award representing 100% of their lost wages, statutory penalties, and interest. Stoops Decl. ¶ 24; Johnston Decl. ¶ 24. The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks include losing both collective and class certification, having a class or collective decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendant prevailing on one or more of its defenses, including the *de minimis* defense. Stoops Decl. ¶ 27; Johnston Decl. ¶ 27.

Here, each Class Member will receive a payment based upon the number of weeks that he or she worked during the Class Period. Ex. A (Settlement Agreement) § 3.4. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $239.73. Ex. B (Salinas Decl.) ¶ 11. Weighing

the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. Stoops Decl. ¶ 26; Johnston Decl. ¶ 26.

### C.    Certification Is Proper Under Rule 23(e)(2).

Rule 23 also requires the court to consider several criteria – some of which overlap with the *Grinnell* factors – that inform whether the settlement is fair, reasonable, and adequate. These factors include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e)(2) factors do not displace the *Grinnell* factors, but rather identify the "primary procedural considerations and substantive qualities that should always matter" to the court's decision, "focus[ing] the court ... on the core concerns of procedure and substance[.]" Fed. R. Civ. P. 23(e)(2) comment on 2018 amendment. As set forth below, the Rule 23(e)(2) factors should compel the Court to approve the proposed settlement.

### 1.    The Class Representatives and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A-B)).

The first two Rule 23(e)(2) factors – whether the class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length, *see* Fed. R. Civ. P. 23(e)(2)(A)-(B) – correspond to the *Grinnell* factors and favor approval for the

same reasons discussed above. *In re Parking Heaters, Antitrust Litig.*, 15MC0940DLIJO, 2019 WL 8137325, at *6 (E.D.N.Y. Aug. 15, 2019) (explaining that the first two Rule 23(e)(2) factors correspond to the *Grinnell* factors).

## 2.    The Relief Provided to the Class is Adequate (Rule 23(e)(2)(C)).

As discussed above, the record demonstrates that the settlement provides adequate relief to the class by avoiding the cost and risk of further litigation. In addition, the parties have proposed an effective method for processing and allocating Class Members' claims. The Settlement Agreement calls for automatic payments to Class Members who do not opt out of the settlement. Ex. A (Settlement Agreement) § 1.22. The Notice provided to each Class Member included his or her estimated settlement award. Ex. B (Salinas Decl.), Ex 1 (Notice).

The Settlement Agreement's allocation plan calls for all participating Class Members to receive a *pro rata* share of the Fund based on the number of weeks worked during the Class Period. Ex. A (Settlement Agreement) § 3.4(A). To date, two Class Members have opted out of the settlement, and there have been no objections. Ex. B (Salinas Decl.) ¶ 9; *see also In re Vitamin C Antitrust Litig.*, 06-MD-1738 BMC JO, 2012 WL 5289514, at *7 (E.D.N.Y. Oct. 23, 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (quoting *In re Am. Bank Note Holographies, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).

Finally, as set forth in Plaintiff's Motion for Attorneys' Fees, filed concurrently herewith, the proposed award of attorneys' fees is reasonable, and the parties filed the Settlement Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the settlement, on the docket. *See* Fed. R. Civ. P. 23(e)(3); *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 33 (E.D.N.Y. 2019) ("Generally, this provision has been read to reference the settlement agreement

itself, including attorney's fees awarded pursuant to the settlement.") (citing 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018)).

### 3.    The Proposed Settlement Treats Class Members Equitably (Rule 23(e)(2)(D)).

Finally, under the Settlement Agreement, the Class Members are treated equitably relative to each other. For the reasons set forth *supra*, the Court should find that the distribution scheme is sufficiently equitable because the Class Members will be paid a *pro rata* share of the Fund based on the number of weeks worked during the Class Period. Ex. A (Settlement Agreement) § 3.4(A) (allocation formula); *Christine Asia Co. v. Yun Ma*, No. 15-MD-02631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding this factor satisfied where claimants would each "receive their *pro rata* share" of the settlement fund); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably ... and has the benefit of simplicity").

### III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt in to the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Palacio*, 2012 WL 2384419, at *4. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Palacio*, 2012 WL 2384419, at *5. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54; *Palacio*, 2012 WL 2384419, at *5. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 579 F.2d at 1354; *Palacio*, 2012 WL 2384419, at *5. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Stoops Decl. ¶ 20; Johnston Decl. ¶ 20. During the litigation and at the mediation, Plaintiffs and Defendant were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## IV.    The Requested Service Awards Are Reasonable and Should Be Approved

The three named Plaintiffs request service awards of $3,000 each. The Court-approved Notice informed Class Members of the service awards that Plaintiffs request. Ex. B (Salinas Decl.), Ex. 1 (Notice) § IV. No Class Member objected to the service awards. Ex. B (Salinas Decl.) ¶ 10. In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) the time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Frank*, 228 F.R.D. at 187; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

### A.    Plaintiffs Assumed Significant Risks.

"Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Parker*

*v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at \*1 (S.D.N.Y. Feb. 9, 2010). In the employment context, where workers are often blacklisted if they are considered "trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank*, 228 F.R.D. at 187-88; *see also Velez*, 2007 WL 7232783, at \*7 (observing that the plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").

Even where there is no record of actual retaliation, plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Sewell*, 2012 WL 1320124, at \*14 ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at \*7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Although Plaintiffs no longer worked for Defendant when they joined the lawsuit, they risked retaliation from their current employers and put their ability to secure future employment at risk. *See Sewell*, 2012 WL 1320124, at \*14 ("[F]ormer employees … fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at \*7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at \*1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for

references in connection with future employment."); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) (recognizing that former employees face risks to their future employability when they serve as plaintiffs). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, at *1.

**B.     Plaintiffs Expended Significant Time and Effort.**

The Court should grant the requested service awards based on the significant work that Plaintiffs undertook on behalf of the class. Plaintiffs provided detailed information regarding their hours worked, job duties, Defendant's policies, and other information relevant to their claims, and submitted detailed declarations in support of Plaintiffs' Motion for Conditional Certification. Docs. 11-4, 11-5 and 11-6; Stoops Decl. ¶ 29; Johnston Decl. ¶ 29. Plaintiffs also informed putative Class Members of the lawsuit and responded to document requests and other inquiries by Class Counsel. *Id*. Plaintiffs' time and effort supports the requested service awards. *See Sewell*, 2012 WL 1320124, at *15 (awarding $15,000 and 10,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel").

**C.     The Ultimate Recovery Supports the Requested Service Awards.**

The requested service awards are approximately 3.7% of the settlement, which is reasonable. *See Palacio*, 2012 WL 2384419, at *7 (approving award of 3.3% of settlement); *Reyes*, 2011 WL 4599822, at *9 (16.6% of settlement); *Parker*, 2010 WL 532960, at *2 (11% of settlement); *Frank*, 228 F.R.D. at 187 (8.4% of settlement). Courts have approved service awards greater than the awards requested here. *See Toure v. Amerigroup Corp.*, No. 10 Civ 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) ($10,000 for each class representative); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012)

($6,500 to class representatives); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14-15 (S.D.N.Y. Apr. 16, 2012) ($10,000 and $15,000); *Reyes*, 2011 WL 4599822, at *9 ($15,000 and $5,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ($30,000, $15,000, and $7,500 to class representatives and opt-ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) ($15,000 and $10,000).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement; (3) approve the FLSA settlement; and (4) approve service awards for the named Plaintiffs in the amount of $3,000 each.

Dated: July 16, 2020

/s/ *Rod M. Johnston*
Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs and the putative
Class/Collective action members*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2020, I electronically filed the forgoing paper with the Clerk of

the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*
Annette DeCoste