**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **RESOURCE MARKETING CORP., LLC**, <br><br> Defendant. | Case No.:  1:19-cv-00386-MAD-CFH <br><br> HON. Judge Mae A. D'Agostino <br><br><br> Hearing Date: July 27, 2020 |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES**

1

In connection with Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Approval of Service Awards, filed simultaneously with this Motion, Plaintiffs Jerry Baudin, Josephine Duffney and Karishma Persaud ("Plaintiffs") hereby request that the Court (1) award attorneys' fees to Class Counsel in the amount of $81,333.33, which is 33% of the Settlement Fund, and (2) approve reimbursement to Class Counsel of up to $10,000 in necessarily incurred out-of-pocket expenses, as further set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and the Declarations of Kevin J. Stoops and Rod M. Johnston, filed concurrently with this Motion.

Dated: July 16, 2020

/s/ *Rod M. Johnston*

Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2020, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*

Annette DeCoste

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **JERRY BAUDIN**, **JOSEPHINE DUFFNEY** and **KARISHMA PERSAUD**, individually and on behalf of all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>**RESOURCE MARKETING CORP., LLC**,<br><br>    Defendant. | Case No.:  1:19-cv-00386-MAD-CFH<br><br>HON. Judge Mae A. D'Agostino<br><br><br>Hearing Date: July 27, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

I.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 33%
OF THE SETTLEMENT FUND ................................................................................. 2

      A.     The Percentage Method Is the Preferred Method for Awarding
Attorneys' Fees in Common Fund Cases in the Second Circuit ......................... 3

      B.     The *Goldberger* Factors Support an Award of 33% of the Fund ......................... 6

          1.     Class Counsel's Time and Labor .......................................... 6

          2.     Magnitude and Complexity of the Litigation ......................................... 10

          3.     Risk of Litigation ..................................................... 11

          4.     Quality of Representation ....................................... 13

          5.     Fee in Relation to the Settlement ......................................... 14

          6.     Public Policy Consideration ................................................. 16

II.    THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD
TO CLASS COUNSEL OF 33% OF THE SETTLEMENT FUND ........................... 17

III.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF
EXPENSES UNDER THE SETTLEMENT AGREEMENT ....................................... 21

CONCLUSION ..................................................................................................................... 22

# <u>INDEX OF AUTHORITIES</u>

**Cases**

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ......................................................... 16

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................ 10

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522
    F.3d 182 (2d Cir. 2008) ........................................................................................ 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ..................................... 10

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .............................................. 16, 20

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374
    (S.D.N.Y. Aug. 6, 2010) ........................................................................................ 20

*Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472 (1980) ...................................................... 15

*Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513 (Cal. 2012) ................................................ 13

*Buccellato v. AT&T Corp.*, No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. June 30,
    2011) ............................................................................................................. 2, 18

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614
    (S.D.N.Y. Jun. 7, 2011) ......................................................................................... 21

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ............................................ 11

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL
    1948198 (S.D.N.Y. May 11, 2010) ........................................................................... 14

*Cortez v. BestBuy Stores, LP*, No. CV 11–5053, 2012 WL 255345 (C.D. Cal. Jan.25,
    2012) .............................................................................................................. 13

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y.1991) ................................................... 19

*Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F.Supp.2d 440 (S.D.N.Y. 2004) .................... 15

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............... 2, 3, 14, 18

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug.
    23, 2010) ...................................................................................................... 3, 5, 16, 17

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ................................................... 17

*Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov.
    29, 2010) ......................................................................................................... 21

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)........................................14, 17

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)..............................................................................................................15, 20

*Goldberger v. Integrated Res. Inc.,* 209 F.3d 43 (2d Cir. 2000) ........................................ passim

*Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ....................................................................................................... 20

*Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................. 18

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................... 5

*In re Boesky Sec. Litig.*, 888 F. Supp. 551 (S.D.N.Y. 1995).................................................... 18

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)......................... 19

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008)................................................................................................................................ 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................................................... 6

*In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .................................................................................................................... 14

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)..................... 6, 13

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)........................................................................................14, 21

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...................................................................................................................... 5, 21

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..................................................................................................................... 18

*In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ...................................................................................................................... 4, 5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996)...................... 10

*In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)................................................................................................................................4, 5, 6

*In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................ 19

*In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)......................................................................................... 19

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................... 4, 16

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) .......................................................................... 17

*Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019 (S.D.N.Y. Dec. 12, 2012)............. 20

*Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ....................................................................... 5

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................................................................................... passim

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 35 (S.D.N.Y. 2002)............................. 2, 19

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007)................................. 15

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ............................................... 4

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)........................................................................... 16

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ............................................................. 18

*Ordonez v. Radio Shack*, 2013 WL 210223 (C.D. Cal. 2013)................................................. 12

*Palacio v. E\*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ............................................................................................................... 11

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...........................................................................................9, 17, 18

*Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122 (D. Colo. 2019).................... 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)........................................................16, 17

*Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) .................................................................................................................... 17

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................................................................................................. 3, 9

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ............3, 16, 17

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) ...................................................5, 18, 19

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 1320124, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .......................................................................................................... passim

*Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780 (9th Cir. 2007) ................................... 18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................................................................................... 4

*Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).................. 13

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .................................................................................................................................. 2, 18

*Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...................................................................................................................................... 6

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ....................................................................................................................4, 5, 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................................18, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)............................4, 5, 19

*Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009)................................................................................................... 15

*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997)................................. 15

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................................................................................................................... passim

## Other Authorities

29 U.S.C. § 216(b) ................................................................................................................. 7, 10

## Rules

Federal Rules of Civil Procedure 23 ...............................................................................10, 11, 12

## INTRODUCTION

In connection with Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Approval of Service Awards (the "Motion for Final Approval"), filed simultaneously with this Motion,[1] Class Counsel respectfully move this Court for an award of attorneys' fees in the amount of 33% of the Settlement Fund (the "Fund") and reimbursement of up to $10,000 of Class Counsel's out-of-pocket expenses that were incurred in successfully prosecuting this action and effectuating the settlement.[2]

Over the past year, Class Counsel has spent more than 209 attorney, paralegal, and support staff hours prosecuting this case. Stoops Decl. ¶ 38; Johnston Decl. ¶ 38. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $83,222.90. Stoops Decl. ¶ 41; Johnston Decl. ¶ 41.

Class Counsel's request for 33% ($81,333.33) of the Fund ($244,000) is approximately 0.98 times their actual lodestar amount. *Id.* This is a reasonable multiplier in a wage and hour class action settlement. *See, e.g.*, *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at

---

[1] For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declarations of Kevin J. Stoops and Rod M. Johnston in Supp. of Pls.' Mot. for Final Approval.

[2] On January 29, 2020, this Court preliminarily approved the proposed settlement, including Class Counsel's request for reimbursement of up to $10,000 of out-of-pocket expenses. Doc. 42. As of July 7, 2020, Class Counsel has incurred $4,362.92 in litigation costs, which will surely increase in connection with the necessary travel and administrative expenses that will be incurred in securing final settlement approval and effectuating the settlement. Decl. of Kevin J. Stoops in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Stoops Decl.") ¶ 49; Decl. of Rod M. Johnston in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Johnston Decl.") ¶ 49. If, as expected, Class Counsel incurs less than $10,000 in litigation costs, the excess funds will revert back to the Settlement Class and be divided as provided in the Stipulation of Settlement.

*5 (E.D.N.Y. Aug. 6, 2012) (awarding multiplier of 3.5); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Buccellato v. AT&T Corp.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable").

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result. Stoops Decl. ¶ 47; Johnston Decl. ¶ 47. For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

# I.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 33% OF THE SETTLEMENT FUND.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class. The Joint Stipulation of Settlement and Release ("Settlement Agreement"), which was preliminarily approved by the Court, provides that "Class Counsel will petition the Court for an award of attorneys' fees of no more than thirty-three and one-third percent (33 1/3%) of the Gross Settlement Amount, and costs…." Ex. A (Settlement Agreement) § 3.2(A).[3] In addition, the Court-approved notice ("Notice") that was sent to all Class Members stated the following:

> Class Counsel will make a request to the Court for an award of Attorneys' Fees ($81,333.33) and Lawsuit Costs (not to exceed $10,000). The request for Attorneys' Fees and Lawsuit Costs is subject to Court approval. Any amount awarded by the Court will be paid from the Gross Settlement Fund and any amount not awarded

---

[3] Unless otherwise indicated, all exhibits are attached to the Declaration of Rod M. Johnston.

> will revert back to the Settlement Class and be divided as provided in the
> Stipulation of Settlement. Your estimated award assumes that the full amount will
> be requested and awarded.

Ex. D (Decl. of Jarrod Salinas Regarding Notice and Settlement Administration ("Salinas Decl.")),

Ex. 1 (Notice) § IX. No Class Member objected to the requested attorneys' fees or expense

reimbursement. Ex. D (Salinas Decl.) ¶ 10. The lack of objections is some indication of the

reasonableness of the requested award and weighs in favor of approving it. *Sewell v. Bovis Lend

Lease, Inc.*, No. 09 Civ. 1320124, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v.

J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011). The request for 33% of

the Fund plus expenses is reasonable and well within the range approved by courts in similar cases.

*See* § I(B)(5), *infra*.

### A.    The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee

award. *Sewell*, 2012 WL 1320124, at *13; *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL

754862, at *6 (E.D.N.Y. Feb. 18, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010

WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010). Where relatively small claims can only be

prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys

general," attorneys who fill that role must be adequately compensated for their efforts. *Reyes v.

Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *Sand

v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory

attorneys' fees are meant to "encourage members of the bar to provide legal services to those

whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

If not, wage and hour abuses would go without remedy because attorneys would be unwilling to

take on the risk. *Willix*, 2011 WL 754862, at *6; *Sand*, 2010 WL 69359, at *3 ("But for the separate

3

provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage of the fund method, the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons why courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with

their clients"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Willix*, 2011 WL 754862, at *7; *deMunecas*, 2010 WL 3322580, at *9.

Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar

method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at \*2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at \*16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at \*5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

### B.     The *Goldberger* Factors Support an Award of 33% of the Fund.

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)     the time and labor expended by counsel;
(2)     the magnitude and complexities of the litigation;
(3)     the risk of litigation;
(4)     the quality of representation;
(5)     the requested fee in relation to the settlement; and
(6)     public policy considerations.

209 F.3d at 50 (quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.     Class Counsel's Time and Labor.

Class Counsel spent significant effort to achieve the $244,000 settlement. Before and during the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Stoops Decl. ¶¶ 14-17; Johnston Decl. ¶¶ 14-17.

Plaintiffs focused their investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of collective/class certification. Stoops Decl. ¶ 14; Johnston Decl. ¶ 14. Class Counsel interviewed Plaintiffs and several other workers to determine the hours that they worked, the wages they were paid, the nature of their job duties, and other information relevant to their claims. Stoops Decl. ¶ 15; Johnston Decl. ¶ 15. Class Counsel also conducted in-depth background research on Defendant Resource Marketing Corp., LLC ("Defendant"), including client interviews and reviewing public documents, to obtain information on Defendant's corporate structure, operations and facilities. Stoops Decl. ¶ 16; Johnston Decl. ¶ 16. Class Counsel also utilized client interviews, Plaintiffs' time and pay records, and publicly available information to determine, among other things, the nature of the Class Members' job duties and the amount of off-the-clock time that they worked. *Id.*

Class Counsel conducted detailed and comprehensive client interviews in connection with drafting and filing Plaintiffs' Class/Collective Action Complaint (Doc. 1) ("Complaint") and Plaintiffs' Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (Doc. 11) ("Motion for Conditional Certification"), including drafting and preparing Plaintiff' detailed declarations (Docs. 11-4, 11-5 and 11-6) regarding their hours worked, wages paid, and the nature of their job duties. Stoops Decl. ¶ 17; Johnston Decl. ¶ 17.

On April 1, 2019, Plaintiffs filed the Complaint on behalf of themselves and non-exempt hourly call center employees, referred to as account representatives or transfer agents ("Agents"), which Defendant answered on June 18, 2019. Doc. 20; Stoops Decl. ¶¶ 18-19; Johnston Decl. ¶¶ 18-19. On April 15, 2019, Plaintiffs filed their Motion for Conditional Certification (Doc. 11), which Defendant indicated it would oppose. Stoops Decl. ¶ 20; Johnston Decl. ¶ 20.

In lieu of briefing the issue of conditional certification, the parties engaged in settlement discussions, including the exchange of payroll records and data, with the goal of settling, rather than litigating, the dispute. Stoops Decl. ¶ 21; Johnston Decl. ¶ 21. In preparation for mediation, the parties exchanged targeted discovery aimed at allowing them to perform damages calculations. Stoops Decl. ¶ 22; Johnston Decl. ¶ 22. As part of this exchange, Defendant produced data showing the number of Class Members employed as Agents or similar job titles, average earnings, and number of weeks worked. Stoops Decl. ¶ 22; Johnston Decl. ¶ 22. Plaintiffs performed damages calculations based on the data Defendant provided. *Id*.

On November 7, 2019, the parties attended a mediation session in Albany, New York with William G. Bauer, Esq., a well-known and experienced mediator. Stoops Decl. ¶ 23; Johnston Decl. ¶ 23. The parties reached a successful settlement during the mediation held on November 7, 2019 and immediately began working to formalize the settlement terms agreed upon at the mediation and preparing a motion for Court approval of the settlement. *Id*. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement. Stoops Decl. ¶ 24; Johnston Decl. ¶ 24, Ex. A (Settlement Agreement). On January 24, 2020, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Setting Final Approval Hearing (Doc. 41) (the "Motion for Preliminary Approval"). Stoops Decl. ¶ 26; Johnston Decl. ¶ 26. On January 29, 2020, the Court granted Plaintiffs' Motion for Preliminary Approval. Doc. 42; Stoops Decl. ¶ 27; Johnston Decl. ¶ 27.

In performing these tasks, along with post-settlement tasks such as answering Plaintiffs' and Class Members' questions regarding the settlement and when they will get paid, answering questions from the Settlement Administrator, and preparing final approval papers, Class Counsel

spent more than 209 hours of attorney, paralegal, and staff member time, for an aggregate lodestar of approximately $83,222.90. Stoops Decl. ¶¶ 38 & 41; Johnston Decl. ¶¶ 38 & 41. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Stoops Decl. ¶ 40; Johnston Decl. ¶ 40. Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment. Stoops Decl. ¶ 39; Johnston Decl. ¶ 39. Class Counsel made every effort to delegate work to the attorney or paralegal with the lowest hourly rate who was able to effectively perform it. *Id*. Class Counsel's prudent and efficient delegation of work further supports their fee request.

Moreover, the requested fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. Stoops Decl. ¶ 46; Johnston Decl. ¶ 46. *See Reyes*, 2011 WL 4599822, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Stoops Decl. ¶ 46; Johnston Decl. ¶ 46. For example, since the Notice was sent out, Class Counsel and staff have responded to dozens of inquiries from Plaintiffs and Class Members requesting information regarding the terms of the settlement and the amount of their settlement award. *Id*. Class Counsel expects to respond to more

Class Member inquiries after final approval, especially after checks are issued. *Id.*

## 2. <u>Magnitude and Complexity of the Litigation.</u>

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law …. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among Fair Labor Standards Act ("FLSA") cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rules of Civil Procedure 23 ("Rule 23") in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

This case hinged on several mixed questions of fact and law. In particular, the parties disputed that the Agents worked overtime hours "off-the-clock," whether the alleged "off-the-clock" work was compensable, whether Plaintiffs could recover unpaid "gap time" wages under the FLSA or New York state law, whether Plaintiffs pleaded cognizable breach of contract and unjust enrichment claims under New York state law, and whether individual issues as to both liability and damages rendered the litigation unsuitable for class/collective action treatment. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. *See*

*Palacio v. E\*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012) (awarding one-third of common fund in attorneys' fees in Rule 23 and FLSA wage and hour case); *Sewell*, 2012 WL 1320124, at *12 (same).

### 3.   Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger,* 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Stoops Decl. ¶ 47; Johnston Decl. ¶ 47. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Id.* Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.*

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' claims hinged on their ability to prove that Agents were forced by Defendant's policies and practices to work "off the clock" and that the "off-the-clock" work was compensable under the FLSA and New York state law. For example, a Colorado district court recently held that a student loan servicing agency call center representatives' pre-shift activities of setting up

11

computers and loading the relevant programs to become call-ready, which took a few seconds or minutes of work beyond the scheduled working hours, were *de minimis* and thus non-compensable under the FLSA. *Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1141 (D. Colo. 2019).

Furthermore, when taking on this case, Plaintiffs faced the risk that the Court would not grant class/collective certification under the FLSA or Rule 23, and that such a determination would likely be reached only after extensive briefing. Defendant would likely have argued, both in its opposition to class/collective certification and on a decertification motion, that Plaintiffs were unable to show that the alleged violations stemmed from a common policy applicable to the class and that individualized issues preclude certification, including whether Agents had uniform job duties across Defendant's call center throughout the Class Period, whether they performed the same amount off-the-clock work, whether the Agents worked overtime, whether Defendant had unlawful policies prohibiting the Agents from recording their boot-up and login time on their timesheets, and whether some or all of the Class Members' alleged "off-the-clock" work was *de minimis*. Further complicating this issue is the fact that some of Defendant's Agents worked at Defendant's call center facility, some Agents worked remotely from home, while other Agents worked both at the call center and from home. Although Plaintiffs vehemently disagree with the notion that class/collective action treatment is unwarranted in this case, defendants in off-the-clock cases have prevailed on arguments like these. *See, e.g.*, *Ordonez v. Radio Shack*, 2013 WL 210223 at *8 (C.D. Cal. 2013) (denying certification because "[p]laintiff offer[ed] insufficient evidence that any alleged off-the-clock work was due to a standardized employment practice, rather than a product of the vagaries of the store an employee worked in, the time of year, or the manager who was in charge."); *Cortez v. BestBuy Stores, LP,* No. CV 11–5053, 2012 WL 255345 at *9 (C.D.

12

Cal. Jan.25, 2012) (denying certification where there was no evidence of a common policy of off-the-clock work); *Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513, 544 (Cal. 2012) (denying certification of off-the-clock claim where "no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether Brinker knew or should have known of their work.").

### 4.    Quality of Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

Defendant agreed to pay a total of $244,000 to settle this litigation. By Class Counsel's estimation, the settlement amount represents approximately 26.21% of Defendant's $931,047.19 potential damages exposure, assuming Plaintiffs were to prevail on all of their claims and received a damages award representing 100% of their lost wages, statutory penalties, and interest. Stoops Decl. ¶¶ 29-30; Johnston Decl. ¶¶ 29-30. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. Stoops Decl. ¶¶ 31-32; Johnston Decl. ¶¶ 31-32. The settlement amounts will be available to Class Members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. Stoops Decl., Ex. A (Stoops Biography); Johnston Decl. ¶ 4 (listing cases), Ex. E (Brown LLC's Firm Bio). Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. Stoops Decl. ¶¶ 35-37;

Johnston Decl. ¶¶ 35-37; *Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.  Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $244,000 settlement in this case weighs in favor of granting the requested fee award of 33% of the common fund. *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one-third of a $42 million settlement in a FLSA and New York Labor Law ("NYLL") misclassification case). Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds substantially larger than this one. *See, e.g.*, *Willix*, 2011 WL 754862, at *6 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding class counsel 33% of $6 million settlement

fund in FLSA and multi-state wage and hour case); *Khait,* 2010 WL 2025106, at *8 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit).

A fee of 33% of the $244,000 Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). Hence, it is appropriate in this case to award attorneys' fees as a percentage of the gross settlement fund, here $244,000, especially since this is a non-claims made, non-reversionary settlement, meaning that the entire Net Settlement Fund will be distributed to participating Class Members and no amount of the Fund will revert back to Defendant, with the sole exception of uncashed settlement checks remaining in the Fund 180 days after the check was mailed. Ex. A (Settlement Agreement) § 1.13. Notably, courts have approved fee awards of 33% even where amounts made available to class members who do not file claims will revert to the defendants. *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund). This is because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not." *Id.* at 437*; see also, e.g., Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F.Supp.2d 440 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund had been approved

15

notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

### 6. **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

"FLSA and NYLL are remedial statutes designed to protect the wages of workers. The remedial purposes of these statutes require adequate compensation for attorneys who protect those rights." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Khait,* 2010 WL 2025106, at *8 and *Sand,* 2010 WL 69359, at *3); *see also A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Sewell*, 2012 WL 1320124, at *13; *deMunecas*, 2010 WL 3322580, at *8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010); *Sand*, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL

2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7.

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Khait*, 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC,* No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely … be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys … would likely be willing to take on … small-scale class actions[.]" *Id.*; *deMunecas,* 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

## II.     THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF 33% OF THE SETTLEMENT FUND.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks v. Stanley*, No. 01 Civ. 10071,

2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case …." *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

Courts regularly award lodestar multipliers much greater than the 1.05 multiplier sought in this case by Class Counsel. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); s*ee, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.5); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato*, 2011 WL 3348055, at *2 (awarding multiplier of 4.3 in wage and hour class action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re*

*Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Class Counsel spent more than 209 hours litigating and settling this matter. Stoops Decl. ¶ 38; Johnston Decl. ¶ 38. The time spent by Class Counsel is described in the Declarations of Kevin J. Stoops and Rod M. Johnston and summarized in Class Counsel's time and costs summary attached thereto. Ex. B (Sommers Schwartz, P.C. and Brown LLC Time & Costs Summary). The hours worked by Class Counsel result in a lodestar of approximately $83,222.90. Stoops Decl. ¶ 41; Johnston Decl. ¶ 41. Class Counsel's request for 0.98 times their lodestar is well within the range of multipliers regularly awarded in this Circuit and elsewhere. *See* § II, *supra*.

Moreover, Class Counsel should not be penalized for achieving an early settlement, particularly where, as here, the settlement amount represents a substantial portion of the Class Members' lost wages. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie*, 166 F.3d at 461 ("[T]he percentage-of-the-fund method also removes disincentives to prompt

settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In addition, "where 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)). The multiplier that Class Counsel seeks will diminish over time as Class Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, answering Class Member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendant about administering the settlement and distributing the fund. Stoops Decl. ¶ 46; Johnston Decl. ¶ 46; *see, e.g.*, *Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving dispute over whether *cy pres* designee was appropriate); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) (allowing late opt-in to participate in class settlement) (Ex. C); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

Notably, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman*, 293 F.R.D. at 474; *see also Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden,*

*L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching settlement in the early stages of litigation. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

## III.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Class Counsel request reimbursement of up to $10,000 in out-of-pocket expenses to be paid from the Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, the Notice informed Class Members that Class Counsel would seek reimbursement of up to $10,000 in expenses and costs. Ex. D (Salinas Decl.), Ex. 1 (Notice) § IX. As of July 7, 2020, Class Counsel has incurred $4,362.92 in litigation costs, which were incidental and necessary to the representation of the Class and will surely increase in connection with the necessary travel and administrative expenses that will be incurred in effectuating approval of the settlement. Stoops Decl. ¶¶ 35 & 48-49; Johnston Decl. ¶¶ 35 & 48-49, Ex. B (Sommers Schwartz, P.C. and Brown LLC Time & Costs Summary). These expenses include photocopy, air fare, local travel, lodging, car rental, meals, case evaluation fees, publications & online media expenses, and filing fees. Stoops Decl. ¶ 49; Johnston Decl. ¶ 49. No Class Member objected to Class Counsel's request to be reimbursed for out-of-pocket expenses. Ex. D (Salinas Decl.) ¶ 10.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $81,333.33, which is 33% of the Fund; and (ii) reimbursing up to $10,000 of Class Counsel's necessarily incurred out-of-pocket expenses.

Dated: July 16, 2020

/s/ *Rod M. Johnston*
Kevin J. Stoops (admitted *pro hac vice*)
Rod M. Johnston (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

Jason T. Brown (*NY Bar ID# 4389854*)
Nicholas Conlon (*NY Bar ID# 801616*)
JTB LAW GROUP, LLC
155 2nd Street, Suite 600
Jersey City, New Jersey 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs and the putative*
*Class/Collective action members*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2020, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Annette DeCoste*
Annette DeCoste