**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JERRY BAUDIN,** *individually and on behalf of all*
*other similarly situated individuals***; JOSEPHINE**
**DUFFNEY,** *individually and on behalf of all other*
*similarly situated individuals***; and KARISHMA**
**PERSAUD,** *individually and on behalf of all other*
*similarly situated individuals***,**

                                        **Plaintiffs,**

          **vs.**                                                      **1:19-cv-386**
                                                                        **(MAD/CFH)**

**RESOURCE MARKETING CORP., LLC,**

                                        **Defendant.**

_____

**APPEARANCES:**                         **OF COUNSEL:**

**BROWN, LLC**                           **JASON T. BROWN, ESQ.**
111 Townsquare Place
Ste. 400
Jersey City, New Jersey 07310
Attorneys for Plaintiffs

**SOMMERS SCHWARTZ, P.C.**               **KEVIN J. STOOPS, ESQ.**
One Towne Square, Suite 1700             **ROD JOHNSTON, ESQ.**
Southfield, Michigan 48076
Attorneys for Plaintiffs

**JACKSON LEWIS, P.C.**                  **VINCENT E. POLSINELLI, ESQ.**
677 Broadway, 9th Floor
Albany, New York 12207
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 1, 2019, Plaintiffs filed a collective and class action complaint against Defendant

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New

York State Labor Law, breach of contract, and unjust enrichment, based on Defendant's failure to pay overtime wages. *See* Dkt. No. 1. On January 29, 2020, the Court preliminarily approved the parties' proposed settlement, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing. *See* Dkt. No. 42.

On July 16, 2020, Plaintiffs filed their motions to certify class settlement and for attorneys' fees and costs. *See* Dkt. Nos. 47 & 48. On July 27, 2020, the Court held a final approval hearing, during which it signaled its intent to approve of the settlement and requested fees and that a written decision would follow.

As set forth below, the Court hereby grants Plaintiffs' unopposed motions for final approval of class settlement and for attorneys' fees and costs.

## II. BACKGROUND

### A.    Factual Allegations

Plaintiffs and Class Members are 497 current and former account representatives and transfer agents ("Agents") who worked for Defendant at any time between April 1, 2016 through November 7, 2019. Plaintiffs alleged that Defendant violated the FLSA and New York wage and hour law by failing to pay Agents for "off-the-clock" overtime hours. *See* Dkt. No. 1; *see also* Dkt. No. 47-1 at ¶ 4; Dkt. No. 47-2 at ¶ 4.

Plaintiffs alleged that they and the Class Members were employed by Defendant as Agents at Defendant's Clifton Park, New York call center facility and were required to perform unpaid off-the-clock overtime work before and after their scheduled shifts and during their unpaid meal breaks, such as booting up and shutting down computers and logging into computer software programs and applications that were integral and necessary for the performance of their work. *See* Dkt. No. 47-1 at ¶ 13; Dkt. No. 47-2 at ¶ 13. According to Plaintiffs, Agents were not

2

compensated for this time because Defendant trained and instructed Agents not to record this time on their timesheets. *See id.* Plaintiffs sought to recover unpaid overtime wages arising from the alleged off-the-clock overtime work, as well as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs. *See id.*

With respect to the alleged off-the-clock overtime work, Plaintiffs alleged that Defendant failed to pay Agents for the following tasks:

    a.    At the beginning of each shift in connection with: locating workstations, starting-up and logging into the computers, systems and programs utilized during their shift, and reading e-mails – averaging five-to-ten minutes per shift;

    b.    During their meal periods in connection with logging back into Defendant's programs and systems – taking up to five minutes per shift; and

    c.    At the end of each shift in connection with: shutting-down and logging out of computers, systems and programs – averaging two-to-three minutes per shift.

Dkt. No. 1 at ¶¶ 52-63. Additionally, Plaintiffs alleged that Defendant refused to compensate its Agents for any time spent disconnected from Defendant's auto-dialing system. *See id.* at ¶ 8. According to Plaintiffs, Defendant unlawfully deducted this compensable time – averaging up to one hour per week – from the Agent's timesheets. *See id.* at ¶¶ 64-74.

Defendant answered the complaint on June 18, 2019. *See* Dkt. No. 20. Defendant denied all liability, damages, and that class or collective action certification was proper. *See id.* On April 15, 2019, Plaintiffs filed their motion for conditional certification, *see* Dkt. No. 11, which Defendant indicated that it would oppose. *See* Dkt. No. 47-1 at ¶ 15; Dkt. No. 47-2 at ¶ 15.

**B.**    **Settlement Negotiations**

In lieu of briefing conditional certification, the parties engaged in settlement discussions, including the exchange of payroll records and data, with the goal of settling, rather than litigating, the dispute. *See* Dkt. No. 47-1 at ¶ 16; Dkt. No. 47-2 at ¶ 16. In preparation for mediation, the parties exchanged targeted discovery aimed at allowing them to perform damages calculations. *See id.* at ¶ 17. As part of this exchange, Defendant produced data showing the number of Class Members employed as Agents, average earnings, and number of weeks worked. *See id.* Plaintiffs performed damages calculations based on the data Defendant provided. *See id.*

On November 7, 2019, the parties attended a mediation session in Albany, New York with William G. Bauer, Esq. *See id.* at ¶ 18. The parties reached a successful settlement during the mediation and then began working to formalize the settlement terms agreed upon and preparing a motion for Court approval of the settlement. *See id.*

On January 24, 2020, Plaintiffs filed their unopposed motion for preliminary approval of class action settlement, approval of class notice, and setting final approval hearing. *See* Dkt. No. 41. In their motion, Plaintiffs requested, among other things, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class. *See* Dkt. No. 47-1 at ¶ 21; Dkt. No. 47-2 at ¶ 21. On January 29, 2020, the Court granted Plaintiffs' motion for preliminary approval. *See* Dkt. No. 42.

**C.    CAFA Notice**

Defendant sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on February 27, 2020. *See* 28 U.S.C. § 1715(d). The 90-day CAFA notice period concluded on May 27, 2020. *See* Dkt. No. 47-1 at ¶ 23; Dkt. No. 47-2 at ¶ 23.

**D.    Summary of the Settlement Terms**

   *1. The Settlement Fund*

The settlement establishes a gross settlement amount of $244,000 to settle claims against Defendant (the "Fund"). *See* Dkt. No. 41-1 at § 1.13. The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs. *See id.* Defendant will pay all applicable employer-side payroll taxes. *See id.* at § 3.5(C).

### 2. Eligible Employees and Releases

Class Members who are entitled to receive payments from the Fund include all of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019. *See id.* at § 1.4. All Class Members who sign and cash a settlement check or who do not timely opt out of the settlement will release Defendant from all state and federal wage and hour claims. *See id.* at § 4.1(A)-(B). In addition, Plaintiffs will provide a general release, including a release of unknown claims. *See id.* at § 4.1(C).

### 3. Allocation Formula

Class Members will be paid pursuant to an allocation formula based on the number of weeks they worked during the Class Period. *See id.* at § 3.4. The Settlement Claims Administrator will calculate Settlement Awards based on the class information provided by Defendant, and will allocate such payments as follows:

> (Total of Settlement Awards ÷ Total Weeks Worked by All Settlement Class Members During the Class Period) x Total Weeks Worked by the Respective Settlement Class Member During the Class Period = Settlement Class Member's Portion of Settlement Awards.

*Id.* For any Class Member whose Settlement Check is returned as undelivered, the Settlement Claims Administrator will attempt to locate the claimant and re-mail the check. *See id.* at §

2.10(C).  Any uncashed settlement checks remaining in the Fund 180 days after the check was mailed will revert to Defendant.  *See id.* at § 1.13.

### 4. Attorneys' Fees and Costs

Class Counsel also seek an award of attorneys' fees of $81,333.33, which is 33% of the Settlement Fund.  *See* Dkt. No. 48.  Additionally, Class Counsel seek reimbursement of up to $10,000 in necessarily incurred out-of-pocket expenses.  *See id.*

### 5. Settlement Claims Administration

To facilitate the logistics of executing this settlement, the parties retained Simpluris to serve as the Settlement Claims Administrator ("Claims Administrator").  *See* Dkt. No. 47-1 at ¶ 30; Dkt. No. 47-2 at ¶ 30.  The Claims Administrator's fees of $25,000 are to be paid from the Fund.  *See* Dkt. No. 41-1 at § 1.13.

On March 11, 2020, the Claims Administrator mailed the Court-approved Class Notice ("Notice") to 497 Class Members whose names and addresses were provided by Defendants.  *See* Dkt. No. 47 at 17.  If a Class Member's Notice was returned as undeliverable and without a forwarding address, the Claims Administrator performed an advanced address search (*i.e.*, skip trace) on all of these addresses by using Accurint, a research tool owned by Lexis-Nexis.  *See id.* at 17-18.  Through the advanced address searches, the Claims Administrator was able to locate seventy-five updated addresses and promptly mailed Notices to those updated addresses.  *See id.* at 18.  Ultimately, sixteen Class Member's Notices were undeliverable because the Claims Administrator was unable to locate a current address.  *See id.*

The Notice advised Class Members of their right to object to or exclude themselves from the settlement, and explained how to do so.  *See id.*  To date, there have been no objections, and

only two Class Members (representing 0.40% of the Settlement Class) have opted out of the settlement. *See id.*

## III. DISCUSSION

### A.    Class Certification

#### *1. Rule 23*

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding findings of predominance under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M] anageability concerns do not stand in the way of certifying a settlement class"). "But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

On January 24, 2020, the Court preliminarily certified the settlement class. *See* Dkt. No. 41. Plaintiffs now request the Court to certify the following class for purposes of effectuating the settlement:

> All of Defendant's current or former account representatives and transfer agents who worked for Defendant at any time between April 1, 2016 through November 7, 2019.

Dkt. No. 47 at 18.

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to grant certification." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 2. Numerosity

Turning to the criteria of Rule 23, it is apparent that the proposed class satisfies the numerosity requirement. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As such, numerosity here is easily satisfied because there are approximately 497 Class Members.

### 3. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). Courts construe the commonality requirement liberally. *See id.*

Here, the case involves numerous common issues.  Plaintiffs and Class Members all bring identical claims, *i.e.*, that Defendant fail to pay them overtime wages for hours worked "off the clock," in violation of the FLSA and New York wage and hour law.  Courts regularly find such allegations sufficient to satisfy the commonality requirement.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 WL 1948198, \*3 (S.D.N.Y. May 11, 2010).

### 4. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality requires that a class representative has "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000).  The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative."  *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims.  Defendant failed to pay Plaintiffs and Class Members overtime wages for hours worked "off the clock" pursuant to the same company policies and practices.  Additionally, the claimed injuries arise from the same course of conduct for both the Class Members and Plaintiffs.  As such, Plaintiffs have satisfied the typicality requirement.  *See Morris*, 859 F. Supp. 2d at 616; *Frank*, 228 F.R.D. at 182.

### 5. Adequacy of the Named Plaintiffs

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

In the present matter, there is no evidence that the interests of Plaintiffs and the Class Members are at odds.  Rather, the record reflects that Plaintiffs and the Class Members have the same incentive to maximize their compensation for the past harm.

Additionally, Class Counsel in this case has established that they are qualified, experienced, and able to conduct the litigation of this case.  Class Counsel is experienced in handling class actions, complex litigation, and FLSA-related claims.  As such, the Court finds that Class Counsel also meets the Rule 23(a)(4) requirements for adequate representation.

### 6. Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The matters pertinent to these findings include:

10

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, again, it is clear that Plaintiffs have satisfied the requirements of Rule 23(b)(3). As discussed, common questions of law and fact predominate over any questions that might affect the individual Plaintiffs. Further, a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Class Member is otherwise entitled to. Additionally, litigating this matter as a class action will conserve judicial resources and is more efficient for the Class Members, particularly those who lack the resources to bring their claims individually. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, *7 (S.D.N.Y. Sept. 16, 2011); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, *3 (S.D.N.Y. Aug. 16, 2011).

Accordingly, the Court grants Plaintiffs' motion insofar as it seeks class certification for purposes of settlement.

**B.      Fairness of the Proposed Settlement**

*1. Standard of Review*

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also*

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014). Federal

Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if "it

is fair, reasonable, and adequate" after considering the following:

> (A) the class representatives and class counsel have adequately
> represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of
>> distributing relief to the class, including the method
>> of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's
>> fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under
>> Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each
> other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Second Circuit also analyze the framework set forth in *City of Detroit v.

Grinnell Corp.*, 495 F. 2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.

Integrated Res., Inc.*, 209 F. 3d 43 (2d Cir. 2000), in tandem with Rule 23 to determine whether a

class settlement is substantively fair and warrants final approval. *See In re Namenda Direct

Purchaser Antitrust Litig. ("Namenda")*, ___ F. Supp. 3d ___, 2020 WL 2749223, *2-3 (S.D.N.Y.

2020) (citing *Grinnell*, 495 F.2d at 463). The *Grinnell* factors include (1) the complexity, expense

and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings

and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability

of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

settlement fund in light of the  best possible recovery; and (9) the range of reasonableness of the

settlement fund to a possible  recovery in light of all the attendant risks of litigation.  *See Grinnell*,

495 F.2d at 463.

### 2. The Settlement is Procedurally Fair

Rules 23(e)(2)(A)-(B) "constitute the procedural analysis" of the fairness inquiry.  *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y.

2019).  "A strong initial presumption of fairness attaches to a proposed settlement if it is reached

by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's

recommendation."  *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-7192, 2019 WL 6889901, *6

(S.D.N.Y. Dec. 18, 2019) (citations omitted).  This presumption of fairness and adequacy applies

here.

The submissions before the Court and as discussed at the fairness hearing, the settlement

was reached through arm's-length negotiations and after experienced counsel had evaluated the

merits of Plaintiffs' claims.  Plaintiffs' counsel conducted a thorough investigation, engaged in

substantial informal discovery, and participated in extensive settlement negotiations with

Defendant.  *See* Dkt. No. 47-1 at ¶¶ 9-12; Dkt. No. 47-2 at ¶¶ 9-12.  The parties attended an all-

day mediation with an experienced employment law mediator on November 7, 2019, during

which they were ultimately able to resolve the case.  *See id.* at ¶¶ 18 & 20.  During the next

several weeks, the parties negotiated the remaining terms of the settlement, which were

memorialized in a detailed final settlement agreement including all terms.  *See id.* at ¶ 9.  These

arm's-length negotiations raise a presumption that the settlement meets the requirements of due

process.  *See Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, \*3 (S.D.N.Y. June 22, 2012).

Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3. The Settlement is Substantively Fair

#### a. The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  This case, had it not settled, would have been all three.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with 497 Class Members and claims under federal and state law.  *See* Dkt. No. 47-1 at ¶ 7.

Additionally, settlement of this matter avoided the delay that necessarily would have followed formal discovery, motion practice, and the time needed for the Court to act on those motions.  After all that, a lengthy and complex trial would be required, that would consume tremendous time and resources for all parties and the Court.  Therefore, the first *Grinnell* factor weighs heavily in favor of final approval.

#### b. The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, \*1 (S.D.N.Y. May 15, 2003).

To date, two Class Members have opted out of the settlement and there have been no objections.  Class Counsel further indicates that they have communicated with several Class Members who have reacted very positively to the settlement.  *See* Dkt. No. 47-1 at ¶ 31; Dkt. No. 47-2 at ¶ 31.  As such, this factor favors final approval.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "'focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal.'"  *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, *7 (S.D.N.Y. Sept. 9, 2015) (quotation omitted).  The parties' discovery here meets this standard.  Plaintiffs' counsel conducted an extensive investigation of the claims and defenses before filing the case.  *See* Dkt. No. 47-1 at ¶¶ 9-12; Dkt. No. 47-2 at ¶¶ 9-12.  To permit the parties to perform damages calculations in preparation for mediation, the parties exchanged targeted discovery, including data showing the number of Class Members employed as Agents, average earnings, and number of weeks worked.  *See id.* at ¶ 17.  This discovery was more than sufficient to permit the parties to thoroughly assess the merits and risks of the case and to calculate damages.  *See Palacio*, 2012 WL 2384419, at *4 (granting final approval where the parties conducted informal discovery, but no depositions were taken); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, *5 (S.D.N.Y. Dec. 13, 2011) (same).  Therefore, this factor favors final approval.

### d. Risk of Establishing Liability and Damages and Maintaining Class Action

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability, "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the settlement.  In assessing the fourth, fifth, and sixth factors, which are often considered together, the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to 'foresee with absolute certainty the outcome of the case.'" *Fleisher*, 2015 WL 10847814, at \*8 (quotation omitted).  "'[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id.* (quoting *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "In assessing the risks, courts recognize that 'the complexity of Plaintiff's claims *ipso facto* creates uncertainty.'"  *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009)).

Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuant the action through class certification, summary judgment, trial, and appeal.  A trial on the merits would involve risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to prove that they and the Class Members worked overtime hours for which they were not compensated, and that Defendant knew or should have known that this work was being performed.  Plaintiffs would also have to overcome Defendant's defense that Class Members' alleged off-the-clock work was *de minimis*.  *See, e.g.*, *Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1141 (D. Colo. 2019) (holding that a student loan servicing agency call center's representatives pre-shift activities of setting up computers and loading the relevant programs to become call-ready, which took a few seconds or minutes of work beyond the scheduled working hours, were *de minimis* and therefore non-compensable under the FLSA).

16

Additionally, there risk and additional expense associated with obtaining class/collective certification and maintaining both conditional and class certification through trial.  The Court has not certified either an FLSA collective or a Rule 23 class, and such a determination would only be reached after further discovery and exhaustive briefing by the parties.  Even assuming that the Court granted certification, there is always the risk of decertification after the close of discovery. *See Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting the defendant's motion to decertify collective action).  Risk, expense, and delay permeate such processes.

As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting final approval.

### e. Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment.  Even assuming that it could withstand a greater judgment, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted).  Indeed, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, *8 (S.D.N.Y. May 1, 2008) (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006)).

Here, there is some evidence that Defendant could not withstand a greater judgment, as the Settlement Agreement calls for 24 monthly payments of $6,000 per month. *See* Dkt. No. 41-1 at § 1.14.  Regardless, this factor is, at best, neutral, and "does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86 (citations omitted).

### f. Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also strongly support approval of the settlement. *Grinnell*, 495 F.2d at 463. Courts typically analyze the final two *Grinnell* factors together. *See Global Crossing*, 225 F.R.D. at 460. In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'" *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, *5 (E.D.N.Y. Nov. 20, 2012) (quoting *Frank*, 228 F.R.D. at 186). Rather, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119. Moreover, the settlement amount must be judged "'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro*, 2014 WL 1224666, at *11 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)). The overall value of the settlement comprises monetary as well as non-monetary relief. *See Velez v. Novartis Pharm. Corp.*, No. 04-cv-09194, 2010 WL 4877852, *18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be considered in calculating value of a settlement).

In the present matter, Defendant has agreed to settle this case for a substantial amount, $244,000. The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame

motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal with their judgment in tact.

By Class Counsel's estimation, the settlement amount of $244,000 represents approximately 26.21% of Defendant's potential damages exposure of $931,047.19, assuming Plaintiffs were to prevail on all of their claims and received a damages award representing 100% of their lost wages, statutory penalties, and interest. *See* Dkt. No. 47-1 at ¶ 24; Dkt. No. 47-2 at ¶ 24. The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation, including the *de minimis* defense. *See id.* at ¶ 27.

The Class Members will receive a payment based upon the number of weeks that he or she worked during the Class Period. *See* Dkt. No. 41-1 at § 3.4. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $239.73. *See* Dkt. No. 47-2 at 40-41. Weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the settlement amount is reasonable.

### g. Rule 23(e)(2)(C)-(D)

Rule 23 also requires the Court to consider whether the relief provided for the class is adequate and whether the proposed settlement treats class members equitably relative to each other. As discussed above, the record demonstrates that the settlement provides adequate relief to the Class Members by avoiding the cost and risk of further litigation and the parties have proposed an effective method for processing and allocating Class Members' claims. The Settlement Agreement calls for automatic payments to Class Members who do not opt out of the settlement and the notice provided to each Class Member included his or her estimated settlement award.

The Settlement Agreement's allocation plan calls for all participating Class Members to receive a *pro rata* share of the Fund based on the number of weeks worked during the Class Period. *See* Dkt. No. 41-1 at § 3.4(A). The Court finds that this allocation is reasonable and treats all Class Members in an equitable manner. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, *7 (E.D.N.Y. Oct. 23, 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel") (quotation omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "*pro rata* share" of the settlement fund).

Finally, as will be discussed in more detail below, Plaintiffs' proposed award of attorneys' fees (as modified by the Court) is reasonable and the parties filed the Settlement Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the settlement, on the docket. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

## C.   Approval of the FLSA Settlement

Plaintiffs also request that the Court approve the settlement of their FLSA claims, which are brought as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Palacio*, 2012 WL 2384419, at *4 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)) (other citations omitted). As such, courts in the Second Circuit have regularly

held that, because "'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Operating Corp.*, No. 16-cv-1052, 2017 WL 11508016, *5 (E.D.N.Y. Aug. 7, 2017) (citing cases).

Having found that Plaintiffs satisfied the requirements set forth in *Grinnell* for final approval of the class claims, the Court finds that approval of the FLSA collective claims is appropriate. *See Manley v. Midan Rest. Inc.*, No. 14-CV-1693, 2017 WL 1155916, *6 (S.D.N.Y. Mar. 27, 2017).

**D.      Service Awards**

The three named Plaintiffs also seek service awards of $3,000 each. *See* Dkt. No. 47 at 36. They argue that these service awards are appropriate and reasonable and note that no class members have objected to the proposed award. *See id.*

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall v. ProSource Technologies, LLC*, No. 14-cv-2502, 2016 WL 1555128, *9 (E.D.N.Y. Apr. 11, 2016) (quotation omitted). A service award of $3,000 for each Named Plaintiff is reasonable and within the range of awards granted in similar matters. *See id.* (granting each of the named plaintiffs a service award of $3,500 in a case brought under the FLSA and New York Labor Law); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-5669, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (awarding service award of $5,000 to the named plaintiffs). Therefore, the Court approves a $3,000 service award for each of the Named Plaintiffs.

**E.      Costs**

Class Counsel request reimbursement of up to $10,000 in out-of-pocket expenses to be paid from the Settlement Fund.  *See* Dkt. No. 48 at 29.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted).

Here, the Notice informed Class Members that Class Counsel would seek reimbursement of up to $10,000 in expenses and costs.  As of July 7, 2020, Class Counsel has incurred $4,362.92 in litigation costs, which were incidental and necessary to the representation of the Class.  These already incurred expenses include charges for photocopying, air fare, local travel, lodging, car rental, meals, case evaluation fees, publication and online media expenses, and filing fees.  *See* Dkt. No. 48-1 at ¶ 49; Dkt. No. 48-2 at ¶ 49.  The Court finds these already incurred expenses reasonable and necessary.

In support of their request for costs above those that have been documented, Class Counsel summarily states that their litigation costs "will surely increase in connection with the necessary travel and administrative expenses that will be incurred in effectuating approval of the settlement." Dkt. No. 48 at 29; Dkt. No. 48-2 at ¶¶ 35, 48-49.  Class Counsel provides the Court with no explanation as to how their expenses will continue to increase in this matter.  Generally, the Court would have conducted the fairness hearing in person, which undoubtedly leads to increased costs for out-of-town counsel.  Due to the COVID-19 pandemic, however, the July 27, 2020 fairness hearing was held remotely via Skype.  As such, no additional expenses would have been incurred.  Therefore, the Court finds that Class Counsel has failed to justify an award of costs above the $4,362.92 that was actually incurred.

Accordingly, the Court awards out-of-pocket expenses in the amount of $4,362.92.

**F.      Claims Administrator Fees**

Class Counsel also seek $25,000 for payment to Simpluris, which was selected to serve as the Settlement Claims Administrator.  *See* Dkt. No. 48 at 29; Dkt. No. 48-2 at 52.  Notice of this selection and payment was provided to the Class Members and no objections were made.  The Court finds that this expense is in line with cases of a similar nature and finds that it is reasonable. Accordingly, the Court grants Class Counsel's request.

**G.      Attorneys' Fees**

Class Counsel move for an award of attorneys' fees in the amount of 33% of the Settlement Fund and reimbursement of up to $10,000 of Class Counsel's out-of-pocket expenses that were incurred in prosecuting this action and effectuating the settlement.  *See* Dkt. No. 48 at 9.

*1. Method of Calculating Attorneys' Fees*

"Attorneys who create a common fund from which members of a class are compensated are entitled to 'a reasonable fee — set by the court — to be taken from the fund.'"  *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  Such a fee award directly depletes the amount by which the class benefits.  Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court.  *See, e.g.*, *Burger v. CPC Intern., Inc.*, 76 F.R.D. 183, 188 (S.D.N.Y. 1977).

The Court of Appeals has sanctioned two methods — the lodestar method and percentage method — for calculating reasonable attorneys' fees in class actions.  *See Goldberger*, 209 F.3d at 50.  The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate."  *Id.* at 47 (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).  The resulting lodestar

23

may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation. *See id.* The second method is the far simpler "percentage method," by which the fee award is "some percentage of the fund created for the benefit of the class." *Savoie*, 166 F.3d at 460 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)). In determining what percentage of the fee to award, courts consider the same factors used to gauge the appropriate multiplier for the lodestar. *See Goldberger*, 209 F.3d at 47. The resultant percentage is lowered frequently where the common fund is large in order to avoid a perceived windfall for plaintiffs' counsel. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d at 233.

The Court has discretion to award fees based on either the lodestar method or the percentage method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this. *See Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216, 2014 WL 3778173, *9 (S.D.N.Y. July 31, 2014) (citing *McDaniel*, 595 F.3d at 417); *Wal-Mart*, 396 F.3d at 121. When utilizing the percentage method, courts often "crosscheck" the adequacy of the resulting fee by applying the lodestar method. *See Goldberger*, 209 F.3d at 50. Under use of either method, the touchstone of the inquiry is whether the award is reasonable. *See id.* A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *See id.*

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar

magnitude and complexity as guidance.  *See McGreevy v. Life Alert Emergency Resp., Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017).  Additionally, a sliding scale approach – awarding a smaller percentage of the settlement as the amount of the settlement fund increases – is appropriate in order to avoid overcompensating the plaintiffs' counsel to the detriment of the class members they represent.  *See id.* (citing *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014)) (other citation omitted).

Class Counsel contend that a fee of 33% of the gross settlement fund is reasonable and commonly awarded in cases of this nature.  While this award is at the high end of what courts have held to be a reasonable baseline fee in common fund settlements of a similar scale and nature, the Court finds that it is a reasonable baseline in the present matter.

### b. Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $244,000 settlement.  Before and during the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  *See* Dkt. No. 48-1 at ¶¶ 14-17; Dkt. No. 48-2 at ¶¶ 14-17.  Class Counsel interviewed Plaintiffs and several other potential Class Members to determine hours worked, wages paid, the nature of their job duties, and other information relevant to the claims.

On April 15, 2019, Plaintiffs filed their motion for conditional certification in this action, which Defendant indicated that it would oppose.  *See id.* at ¶ 20.  Rather than oppose the motion, the parties engaged in settlement discussions, including the exchange of payroll records and data. *See id.* at ¶ 21.  In preparation for mediation, the parties exchanged targeted discovery aimed at allowing them to perform damages calculations.  *See id.* at ¶ 22.  At the November 7, 2019 mediation, the parties were able to reach a settlement.  Upon completion of the formal Settlement

Agreement, on January 24, 2020, Plaintiffs filed their unopposed motion for preliminary approval. *See* Dkt. No. 41. In performing these and other tasks, Class Counsel contends that they have spent more than 209 hours of attorney, paralegal, and staff member time, which they claim represents an aggregate lodestar of approximately $83,222.90. *See* Dkt. No. 41-1 at ¶¶ 38 & 41; Dkt. No. 48-2 at ¶¶ 38 & 41.[1]

Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c. Complexity of the Case

The magnitude and complexity of this case also supports the requested award. Among FLSA cases, the most complex type is the "hybrid" action brought here, where the state wage and hour violations are brought as class actions pursuant to Rule 23 in the same case as the FLSA collective action. *See, e.g., Siler v. Landry's Seafood House-N.C., Inc.*, No. 13 Civ. 587, 2014 WL 2945796, *9 (S.D.N.Y. June 30, 2014). In this case, because of the early stage at which it settled, the complexity of hybrid cases was a factor only in drafting the Settlement Agreement and Notice to Class Members. *See Espinal v. Victor's Café 52nd Street, Inc.*, No. 16-cv-8057, 2019 WL 5425475, *3 (S.D.N.Y. Oct. 23, 2019).

### d. Risk of Litigation

---

[1] In his declaration in support of the motion for attorneys' fees, Kevin J. Stoops, Esq., who graduated from law school in 2004 and is currently a "Senior Shareholder" at his law firm, admits that his law firm "typically charges $350 per hour for [his] legal services in FLSA and state wage law class action cases." Dkt. No. 48-1 at ¶ 37. Mr. Stoops then goes on to state that "I believe we are reasonable in charging lodestar rates of $615 per hour for myself[.]" *Id.* He provides no justification for why nearly double his normal rate is appropriate and reasonable. The Court presumes, however, that this number was selected because, by charging this inflated hourly rate, Class Counsel can now claim that the $81,333.33 in attorneys' fees that they seek (33% of the Gross Settlement Fund) "is 0.98 times their lodestar." Dkt. No. 48-1 at ¶ 41. Considering that Mr. Stoops spent 46.9 hours in litigating this case, his inflated "lodestar rate" results in an additional $12,428.50 in fees.

Class Counsel undertook some risk in accepting the case on a contingency basis. *See McGreevy*, 258 F. Supp. 3d at 386 (citations omitted). However, aside from the inherent risk associated with all litigation, the only specifically identified risk that Class Counsel faced was the potential applicability of the *de minimis* defense. *See* Dkt. No. 48 at 19-20. As such, the risk was not so great as to warrant an increase in the awarded fees.

### e. Quality of the Representation

Class Counsel competently and efficiently represented Plaintiffs in prosecuting this action. As such, this factor supports the requested award.

### f. Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014). Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. Protecting workers from wage-and-hour violations is of genuine public interest, and fees in such cases should provide incentives for counsel to bring such cases in the future. "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *McGreevy*, 258 F. Supp. 3d at 387.

Here, the Court agrees with Class Counsel that 33% is an appropriate percentage in awarding attorneys' fees. The Court disagrees, however, with Class Counsel's position that the award should be based on the gross settlement amount, rather than the net. The Court agrees with those courts that have held that using the net settlement fund to calculate counsel's fees is appropriate because it (1) incentivizes counsel to keep costs down and (2) avoids the strangeness of awarding a percentage of counsel's expenses in the form of increased attorneys' fees while also

awarding them the full amount of those same costs.  *See In re IPO Sec. Litig.*, 671 F. Supp. 2d
467, 514 (S.D.N.Y. 2009); *see also Alaska Electrical Pension Fund v. Bank of Am. Corp.*, No. 14-
cv-7126, 2018 WL 6250657, *3 (S.D.N.Y. Nov. 29, 2018); *In re LIBOR-Based Fin. Instruments
Antitrust Litig.*, No. 11-cv-5450, 2018 WL 3863445, *4 (S.D.N.Y. Aug. 14, 2018) ("[A]warding
fees as a percentage of net recovery is more consistent with notions of public policy in that doing
so encourages class counsel's prudence and discretion in incurring expenses — expenses that may
not be as closely scrutinized given that there is no single client footing the bill").

Here, the Notice provided to the Class Members clearly states that Class Counsel will
make a request for an award of attorneys' fees in the amount of $81,333.33, which is subject to
Court approval.  *See* Dkt. No. 41-1 at 23-24.  It further states this award will come from the
Settlement Fund and that "any amount not awarded will revert back to the Settlement Class and be
divided as provided in the Stipulation of Settlement."  *Id.* Awarding attorneys' fees based on the
net settlement fund, rather than the gross, is further supported by the fact that this results in
additional money being awarded to the Class Members.

After subtracting the total costs and expenses awarded (which include $25,000 for the
Claims Administrator and $4,362.92 in Class Counsel's out-of-pocket expenses) from the gross
Settlement Fund, there remains a balance of $214,637.08, representing the net Settlement Fund.
Accordingly, the Court finds that the *Golderberger* factors support an award of thirty-three (33)
percent of the Net Settlement Fund, or $70,830.24.

### g. Lodestar Cross-Check

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a
cross-check to the fees awarded under the percentage of the fund method.  *See In re Citigroup*,
965 F. Supp. 2d at 388.  When the lodestar method is used as a cross-check, "the Court need not

exhaustively scrutinize the hours documented by class counsel; instead, the reasonableness of the lodestar 'can be tested by the court's familiarity with the case.'" *Melito v. American Eagle Outfitters, Inc.*, No. 14-cv-2440, 2017 WL 3995619, *19 (S.D.N.Y. Sept. 11, 2017) (quoting *Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548, 2012 WL 1320124, *13 (S.D.N.Y. Apr. 16, 2012)).

Here, Class Counsel asserts that its lodestar is $83,222.90.  However, as discussed above, this number was reached by Mr. Stoops inflating his hourly rate from $350 to $615 per hour to create his "lodestar rate," thereby making Class Counsel's request for 33% of the Gross Settlement Fund appear to be 0.98 times their lodestar.  When reducing Mr. Stoops time to his normal billing rate of $350 per hour, the lodestar is now $68,904.83, which results in an adjusted lodestar multiplier of 1.03.  This adjusted lodestar multiplier further supports the Court's decision that the attorneys' fees award should be based on the Net Settlement Fund.

Accordingly, the Court finds that Class Counsel is entitled to $70,830.24 in reasonable attorneys' fees.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiffs' motion unopposed motion for certification of the settlement class, final approval of the class action settlement, approval of the FLSA settlement, and approval of service awards (Dkt. No. 47) is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for attorneys' fees and reimbursement of expenses (Dkt. No. 48) is **GRANTED in part**;[2] and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 13, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] As set forth in this Memorandum-Decision and Order, the Total Settlement Amount is $244,000.  Of that amount, $3,000 shall be paid to each of the named Plaintiffs as Service Awards; $25,000 shall be paid to the Settlement Claims Administrator, and Class Counsel are entitled to $70,830.24 in attorneys' fees and $4,362.92 in costs, with the remainder of the Settlement Fund to be paid to the Class Members.

30